

**ATTORNEY CANDACE N. ROBINSON**

@cnrlawfirm.com

office :860-269-3939
fax :860-269-3939

candace@cnrlawfirm.com

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

United States Courts
Southern District of Texas
FILED

AUG 18 2025

Nathan Ochsner, Clerk of Court

**VIA U.S. MAIL**
Clerk's Office
United States District Court
Southern District of Texas – Houston Division
515 Rusk Street, Room 5300
Houston, TX 77002

August 15, 2025

***Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 – Jennifer Shah (Reg. No. 37357-509)***

Dear Clerk of Court:

Enclosed please find the following for filing in the above-referenced matter:

1. Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241;

2. Notice of Appearance; and

3. Cashier's Check in the Amount of $5.00 for Petitioner's filing fee.

Kindly file these documents and process them in accordance with the Court's procedures. Please do not hesitate to contact my office should you require any additional information. Thank you for your prompt attention to this matter.

Sincerely,

*Candace Robinson Esq.*

Candace Robinson, Esquire

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
### Instructions

1.   **Who Should Use This Form.** You should use this form if
   - you are a federal prisoner and you wish to challenge the way your sentence is being carried out *(for example, you claim that the Bureau of Prisons miscalculated your sentence or failed to properly award good time credits)*;
   - you are in federal or state custody because of something other than a judgment of conviction *(for example, you are in pretrial detention or are awaiting extradition)*; or
   - you are alleging that you are illegally detained in immigration custody.

2.   **Who Should Not Use This Form.** You should not use this form if
   - you are challenging the validity of a federal judgment of conviction and sentence *(these challenges are generally raised in a motion under 28 U.S.C. § 2255)*;
   - you are challenging the validity of a state judgment of conviction and sentence *(these challenges are generally raised in a petition under 28 U.S.C. § 2254)*; or
   - you are challenging a final order of removal in an immigration case *(these challenges are generally raised in a petition for review directly with a United States Court of Appeals)*.

3.   **Preparing the Petition.** The petition must be typed or neatly written, and you must sign and date it under penalty of perjury. **A false statement may lead to prosecution.**

4.   **Answer all the questions.** You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this petition. If you attach additional pages, number the pages and identify which section of the petition is being continued. All filings must be submitted on paper sized 8½ by 11 inches. **Do not use the back of any page.**

5.   **Supporting Documents.** In addition to your petition, you must send to the court a copy of the decisions you are challenging and a copy of any briefs or administrative remedy forms filed in your case.

6.   **Required Filing Fee.** You must include the $5 filing fee required by 28 U.S.C. § 1914(a). If you are unable to pay the filing fee, you must ask the court for permission to proceed in forma pauperis – that is, as a person who cannot pay the filing fee – by submitting the documents that the court requires.

7.   **Submitting Documents to the Court.** Mail your petition and ____ copies to the clerk of the United States District Court for the district and division in which you are confined. For a list of districts and divisions, see 28 U.S.C. §§ 81-131. All copies must be identical to the original. Copies may be legibly handwritten.

   If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

8.   **Change of Address.** You must immediately notify the court in writing of any change of address. If you do not, the court may dismiss your case.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
F I L E D

AUG 1 8 2025

Nathan Ochsner, Clerk of Court

Jennifer Shah                          )
                                       )
                                       )
_____        )
_Petitioner_                           )
                                       )
v.                                     )    Case No. _____
                                       )             _(Supplied by Clerk of Court)_
Warden- Federal Prison Camp Bryan      )
                                       )
                                       )
_____
_Respondent_
_(name of warden or authorized person having custody of petitioner)_

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
### Personal Information

1.  (a) Your full name:  Jennifer Shah
    (b) Other names you have used:
2.  Place of confinement:
    (a) Name of institution:  FPC Bryan
    (b) Address:   1100 URSULINE AVENUEBRYAN, TX  77803

    (c) Your identification number:  37357-509
3.  Are you currently being held on orders by:
    ☑ Federal authorities      ☐ State authorities      ☐ Other - explain:

    _____
4.  Are you currently:

    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
       If you are currently serving a sentence, provide:
           (a) Name and location of court that sentenced you:  USDC SDNY

           (b) Docket number of criminal case:    1:19-cr-000833-SHS-11
           (c) Date of sentencing:  01/06/2023
    ☐ Being held on an immigration charge
    ☐ Other _(explain)_:

    _____

    _____

### Decision or Action You Are Challenging

5.  What are you challenging in this petition:
    ☑ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

❏ Pretrial detention

❏ Immigration detention

❏ Detainer

❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory
   maximum or improperly calculated under the sentencing guidelines)

❏ Disciplinary proceedings

❏ Other (explain): _____

_____

6.   Provide more information about the decision or action you are challenging:
     (a)  Name and location of the agency or court:   Federal Bureau of Prisons

_____

     (b)  Docket number, case number, or opinion number: _____

     (c)  Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed):
          Denial of recalculation of release date.

_____

     (d)  Date of the decision or action:   07/10/2025

**Your Earlier Challenges of the Decision or Action**

7.   **First appeal**
     Did you appeal the decision, file a grievance, or seek an administrative remedy?
     ☑ Yes            ❏ No
     (a)  If "Yes," provide:
          (1)  Name of the authority, agency, or court:   Informal BP 8 to case manager

          (2)  Date of filing:   05/15/2025
          (3)  Docket number, case number, or opinion number: _____
          (4)  Result:   denied- case manager gave Mrs. Shah a BP 10
          (5)  Date of result:   05/15/2025
          (6)  Issues raised:   Recalculation of release date to 8/6/2025, which was the scheduled release date
          prior to the BOP memos.

     (b)  If you answered "No," explain why you did not appeal: _____

8.   **Second appeal**
     After the first appeal, did you file a second appeal to a higher authority, agency, or court?
     ☑ Yes            ❏ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

Regional Office Grand Prarie TX

(2) Date of filing:  05/22/2025

(3) Docket number, case number, or opinion number:

(4) Result:  denied

(5) Date of result:

(6) Issues raised:  Recalculation of release date to 8/6/2025, which was the scheduled release date prior to the BOP memos.

(b) If you answered "No," explain why you did not file a second appeal:

9.      **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☑ Yes            ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:  Office of General Counsel- Washington, DC

(2) Date of filing:  06/24/2025

(3) Docket number, case number, or opinion number:

(4) Result:  denied

(5) Date of result:  07/10/2025

(6) Issues raised:  Recalculation of release date to 8/6/2025, which was the scheduled release date prior to the BOP memos.

(b) If you answered "No," explain why you did not file a third appeal:

10.     **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes            ☑ No

If "Yes," answer the following:

(a)      Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes                ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes   ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:   Because I am challenging how my sentence is being calculated/ executed not the validity of my conviction or sentence.

_____

_____

_____

11. **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes   ☑ No

If "Yes," provide:

(a) Date you were taken into immigration custody: _____

(b) Date of the removal or reinstatement order: _____

(c) Did you file an appeal with the Board of Immigration Appeals?

☐ Yes   ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____

_____

_____

_____

_____

(d)     Did you appeal the decision to the United States Court of Appeals?

☐ Yes          ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

12.     **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes          ☑ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:**   I am requesting for my release date to be recalculated in accordance with 18 U.S.C. § 3621(e) and BOP Program Statements 5330.11 and 5331.02.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
Shah graduated from RDAP on 8/5/25 and was scheduled to be released on 8/6/2025. On March 31, 2025, the BOP issued a memorandum unlawfully limiting RDAP placement to a maximum of four months. On April 10th the BOP rescinded the memo, however her release date has not been recalculated and she remains incarcerated despite the rescinded guidaance.

(b) Did you present Ground One in all appeals that were available to you?
☑Yes              ☐No

**GROUND TWO:**  Between her RDAP 12 month reduction, earned time credits and eligible time under the Second Chance Act  Shah should have been released on 8/6/ 2025.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
Prior to the BOP memo's Shah was  scheduled for release on 8/6/2025, the day after RDAP graduation. She has a spotless disciplinary record and there are no other reasons besides the rescinded BOP guidance that her scheduled release date was changed.

(b) Did you present Ground Two in all appeals that were available to you?
☐Yes              ☐No

**GROUND THREE:** _____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Three in all appeals that were available to you?
☐Yes              ☐No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Four in all appeals that were available to you?
❏ Yes          ❏ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:

## Request for Relief

15. State exactly what you want the court to do:   Recalculate release date and release Petitioner immediately to community confinement in her home district of Salt Lake City, Utah.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**Declaration Under Penalty Of Perjury**

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:    08/15/2025                                        Jennifer Shah
_____            _____
                                                   *Signature of Petitioner*

                                    *Candace Robinson Esq*
                                    _____
                                    *Signature of Attorney or other authorized person, if any*

Page 9 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

JENNIFER SHAH       :  CASE NO.:
 Petitioner,

v.           :

WARDEN, FEDERAL PRISON CAMP-BRYAN :
 Respondent,

              :

United States Courts
Southern District of Texas
F I L E D

AUG 1 8 2025

Nathan Ochsner, Clerk of Court

## EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Pursuant to 28 U.S.C. § 2241 and the First Step Act, Public Law 115-391, Petitioner Jennifer Shah, Register # 37357-509 by and through counsel, hereby moves the Court for an order directing the Warden of Federal Prison Camp Bryan (hereinafter "FPC Bryan") for immediate transfer to community confinement. Absent the relief requested herein, Petitioner, who was eligible for RDAP Release on August 6, 2025, is suffering severe prejudice and loss of liberty while being unconstitutionally confined beyond her scheduled release date. In support of Petitioner's motion, she alleges as follows:

## I. JURISDICTION AND VENUE

Title 28 U.S.C. §2241 gives the district court authority to grant a writ of habeas corpus where a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241 (c ) (1) and (3). Section 2241 is the proper vehicle to attack the manner in which a sentence is being executed. *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997). Petitioner is confined at FPC Bryan, which is located within the Southern District of Texas. Venue is proper in this District under 28 U.S.C. § 2241(a) and (d) because the Warden of FPC Bryan— Petitioner's immediate custodian—resides and exercises authority within this District. The

1

Warden is the proper Respondent in this action. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## II.    PROCEDURAL HISTORY

On January 6, 2023, Petitioner Jennifer Shah pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The United States District Court for the Southern District of New York sentenced her to seventy-eight (78) months of imprisonment, followed by a five-year term of supervised release. *United States v. Shah*, No. 1:19-cr-000833-SHS-11 (S.D.N.Y. Jan. 6, 2023).

Petitioner self-surrendered into the custody of the Bureau of Prisons ("BOP") on February 17, 2023, and is presently incarcerated at FPC Bryan. She successfully completed the Residential Drug Abuse Program ("RDAP") on August 5, 2025, earning a twelve-month sentence reduction in accordance with BOP Program Statement 5330.11, Residential Drug Abuse Program, Psychology Services Manual. *See* **Exhibit A.**

With the application of RDAP's early release provision, good conduct time credits under 18 U.S.C. § 3624(b), earned First Step Act ("FSA") time credits under 18 U.S.C. § 3632(d)(4), and other eligible program credits, Petitioner was scheduled for transfer to community confinement in her home district of Salt Lake City, Utah, on August 6, 2025. However, due to a known sentence-calculation error attributable to the Bureau of Prisons, Petitioner remains incarcerated beyond her release date.

## III.    BACKGROUND

On March 19, 2025, the United States Probation Office conducted a home visit at Petitioner's residence in Salt Lake City, Utah, in anticipation of her transfer to community

2

confinement. Her relocation was formally approved on March 20, 2025. On March 27, 2025, Petitioner met with her case manager and signed her release paperwork.

On March 31, 2025, the BOP issued an internal memorandum limiting placements in Residential Reentry Centers ("RRCs") under the Second Chance Act ("SCA"), 18 U.S.C. § 3624(c), to a maximum of sixty (60) days for non-RDAP participants and 125 days (approximately four months) for RDAP participants. The memorandum applied without regard to statutory eligibility, earned credits, program completions, or individual reentry needs.

On April 1, 2025, inmates at FPC Bryan, including Petitioner, were notified of this policy change during a Town Hall meeting facilitated by the Warden, Petitioner's case manager, and other RDAP and administrative staff. The announcement reiterated the memorandum's limitations and was followed by a bulletin posted to TRULINCS stating, in part:

> **"Effective immediately, all SCA pending placements (i.e., in the pipeline) will be reduced to a minimum of 60 days, with two exceptions: inmates in RDAP will have their release via § 3621(e) CMPL transfer date reduced to allow for a 125-day placement in the RRC. Residential Reentry Managers (RRMs) should reduce all pending SCA placements in the pipeline with a date after April 21, 2025. RRMs should not reduce any referrals in which FTCs have been earned and applied to pre-release custody, regardless of the amount of time in the community."**

At the time the March 31, 2025, memorandum was issued, Petitioner was actively enrolled in RDAP at FPC Bryan. She met all the rigorous program requirements, with a scheduled graduation date of August 5, 2025. In accordance with BOP Program Statement 5330.11, RDAP completion entitled her to a twelve-month sentence reduction, which— combined with earned First Step Act ("FSA") time credits and good conduct time—resulted in a scheduled transfer to community confinement on August 6, 2025, one day after her RDAP graduation. It is the BOP's standard practice that inmates who successfully complete RDAP are

3

transferred to community confinement either on the date of graduation or the following day, absent disciplinary or disqualifying factors.

On April 10, 2025, the BOP posted a memorandum to its public website rescinding the March 31, 2025, guidance. The April 10th memo stated:

> **"On 3/31/25, the FBOP issued a memorandum announcing limitations on SCA placements in RRCs. Based on concerns about how these limitations impact the population, the BOP will not proceed with the planned changes to limit SCA placement to 60 days (or 125 days for RDAP). A new memo was issued today, April 10, 2025, rescinding the previous guidance."**

Despite this rescission, on April 29, 2025, Petitioner was called into her case manager's office and informed that her release date had been recalculated to **February 24, 2026**—a delay of over six months (**202 days**) from her lawful community confinement transfer date of **August 6, 2025**. When Petitioner asked whether this date was final, or whether it would be corrected because she signed her release paperwork on **March 27, 2025**—before the March 31st memo and thus part of the "pending pipeline" placements—her case manager responded that she "did not know." Subsequently, Petitioner's release-related dates were updated as follows:

- **Community Second Chance Act (SCA) Conditional Placement Date**: September 19[1], 2025.

- **FSA Conditional Placement Date**: April 12, 2026.

- **FSA Projected Release Date**: September 19, 2026.

---

[1] September 19, 2025, is Petitioner's Second Chance Act ("SCA") **conditional** placement date. In all TEAM meeting documentation, the BOP repeatedly states that "all conditional dates are an individual's best-case scenario," emphasizes that such dates are not guaranteed, and claims that a five-factor review is applied to each inmate. In practice, however, the BOP fails to apply the Second Chance Act's provisions and demonstrates no genuine intent to facilitate releases based on SCA conditional placement dates. *See* **Exhibit I, last page.**

Both the March 31st and April 10th memoranda have since been removed from the BOP's public website and scrubbed from the internet. The only remaining reference on the BOP's site is a note stating that the March 31st guidance was rescinded on April 10, 2025. *See* **Exhibit B.**

These revised dates push Petitioner's projected release more than thirteen months past the date required by law. The changes in Petitioner's placement and release dates are the direct result of the BOP's reliance on guidance that was formally rescinded on April 10, 2025. Continued enforcement of a rescinded policy directly contradicts governing statutes, BOP program statements, constituting an unlawful deprivation of liberty.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

A federal prisoner seeking relief under 28 U.S.C. § 2241 generally must exhaust her administrative remedies through the Bureau of Prisons ("BOP") before presenting her claims in federal court. See *Broderick v. Chapman*, 364 F. App'x 111, 112 (5th Cir. 2010) ( citing *Fuller v. Rich*, 11 F. 3d 61, 62 ( 5th Cir. 1994)). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence– to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972).

A prisoner must exhaust all available administrative remedies before challenging the calculation of her sentence in a federal petition. *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). In order to properly exhaust her remedies, an inmate must pursue all stages of the BOP's four-step administrative remedy procedure for inmate complaints. 28 C.F.R. § 542.10-542.19; *see U.S. v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010); *Huff v. Neal*, 555 F. App'x 289, 293 (5th Cir. 2014). Exceptions to the exhaustion requirement are appropriate if administrative remedies are unavailable or "wholly inappropriate to the relief sought," or if "the

5

attempt to exhaust such remedies would itself be a patently futile course of action." *Gallegos-Hernandez*, 688 F.3d at 194 (cleaned up). However, exceptions apply "only in extraordinary circumstances," and the petitioner bears the burden to demonstrate futility. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (cleaned up); *see Davis v. McConnell*, No. 21-30091, 2021 WL 4467620, at *1 (5th Cir. Sept. 29, 2021).

The BOP's Administrative Remedy Program is a four-step process: (1) a BP-8 form for informal resolution with staff; (2) a BP-9 formal written administrative remedy request to the Warden within 20 days after the basis for the grievance; (3) a BP-10 appeal to the Regional Director within 20 days of the Warden's response; and (4) a BP-11 appeal to the General Counsel within 30 days of the Regional Director's response. 28 C.F.R. §§ 542.10–542.19. Under 28 C.F.R. § 542.18, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."

Courts in the Southern District of Texas have recognized that when the BOP fails to respond within the permitted time and no valid extension has been issued, "the appeal is deemed denied." *Latin v. United States*, No. H-22-2739, slip op. at 3 (S.D. Tex. May 10, 2023) (Rosenthal, J.); *Burruss v. Hawkins*, No. H-22-2740, slip op. at 2 (S.D. Tex. Jan. 19, 2023); *Dale v. Warden, FPC Bryan*, No. H-22-3224, slip op. at 2 (S.D. Tex. Mar. 22, 2023); *Parker v. Hall*, No. H-23-4210, slip op. at 3 (S.D. Tex. Feb. 27, 2024).

### A. BP-8 Informal Resolution

On May 15, 2025, Petitioner submitted a BP-8 to her assigned counselor, Mr. Payne, requesting recalculation of her release date in light of rescinded BOP guidance. Instead of forwarding the request through the standard process, Mr. Payne returned it the same day and

6

issued a **_BP-10_** in place of a BP-9[2], stating he was making an "executive decision" because release dates "could not be recalculated" at FPC Bryan. *See* **Exhibit C.**

### B. BP-10 to the Regional Office

On May 22, 2025, Petitioner mailed her BP-10 to the South-Central Regional Office. Pursuant to 28 C.F.R. § 542.18, the Regional Director was required to respond within 30 calendar days—by June 21, 2025—and could extend this deadline only once, for an additional 30 days, if written notice of the extension was provided before the original deadline expired. No such written extension was issued. The Regional Office therefore had until June 21, 2025, to respond; when no response was received, the BP-10 was constructively denied. *See* **Exhibit D.**

### C. BP-11 to the Office of General Counsel

On June 24, 2025[3], Petitioner submitted a BP-11 to the Office of General Counsel. The Office of General Counsel had 40 days to respond, making the due date August 3, 2025. Instead, it issued a denial dated July 10, 2025, which was received at FPC Bryan on July 18, 2025, but withheld from Petitioner until July 22, 2025.

The denial stated:

1. That Petitioner failed to attach her BP-10 or the Regional response. This was incorrect— Petitioner attached her BP-10 and could not attach a Regional response because none had been timely issued. The eventual Regional(BP-10) response was signed July 2, 2025—11 days late—and stamped "received" at FPC Bryan on July 8, 2025—17 days late. *See* **Exhibit E.**

---

[2] Ordinarily, a BP-10 (Regional Administrative Remedy Appeal) is submitted to the Warden, who is required to respond within twenty (20) calendar days. *See* 28 C.F.R. § 542.18. In this case, however, Counselor Payne refused to issue Petitioner a BP-10, calling it a "executive decision" because FPC Bryan could not recalculate her release date.

[3] Petitioner attempted to obtain a BP-11 (Central Office Administrative Remedy Appeal) from her counselor; however, he refused to provide the form on the grounds that she had not yet received a response from the Regional Office—even though the Regional Office's response was already past the regulatory deadline. Under 28 C.F.R. § 542.18, the absence of a timely response entitles an inmate to proceed to the next level of review. The counselor only provided the BP-11 form **after** Petitioner advised him that she consulted her attorney regarding his interference with the administrative remedy process.

2. That she should "submit her appeal in proper form," despite the fact that her appeal complied with all applicable requirements. *See* **Exhibit F.**

### *D. Additional Attempts to Avoid Litigation*

In addition to exhausting all formal administrative remedies, and well before bringing this matter to court, undersigned counsel repeatedly placed the Bureau of Prisons on notice of its ongoing unlawful conduct. Written correspondence was sent to the South-Central Regional Office on June 27, 2025, July 15, 2025, and August 6, 2025; to the Office of General Counsel on June 27, 2025, and July 15, 2025; and to the Deputy Director of the Bureau of Prisons on August 6, 2025, specifically addressing the Bureau's systematic failure to properly implement First Step Act (FSA) credits. These letters demanded recalculation of Petitioner's release date in light of rescinded BOP guidance, yet the agency ignored these requests—despite its own highly publicized press releases boasting that it is "fully implementing the Second Chance Act, the First Step Act, and maximizing home confinement for eligible inmates." *See* **Exhibit G.**

Petitioner timely and properly pursued each step of the BOP's Administrative Remedy Program. The BOP's untimely responses—without valid written extensions—constitute constructive denials at multiple levels. As the Fifth Circuit has made clear, a § 2241 petitioner "is required to exhaust his administrative remedies before seeking habeas relief in federal court," *Broderick*, 364 F. App'x at 112, and Petitioner has done so here. She has therefore "exhaust[ed] all available administrative remedies before she can challenge the computation of her sentence in a § 2241 petition." *Gallegos-Hernandez*, 688 F.3d at 194.

## V. ARGUMENT

### a. The BOP's Delay in Releasing Petitioner After RDAP Graduation Violates 18 U.S.C. § 3621(e).

8

RDAP is the most intensive substance abuse program offered by the BOP. It requires nine months of highly regimented programming, including daily treatment groups, individual counseling, written assignments, behavioral contracts, and strict compliance with program rules. Inmates who fail to meet these requirements face immediate removal and loss of any early release benefit.

Petitioner began RDAP in 2024 and consistently demonstrated full compliance with every aspect of the program. She graduated on August 5, 2025, satisfying all statutory and program requirements. *See* **Exhibit H.** It is common practice that  RDAP eligible inmates are released to community confinement either the same day or the day after completion. Petitioner's original transfer date to community confinement was August 6, 2025, consistent with both 18 U.S.C. § 3621(e) and BOP Program Statements 5330.11 and 5331.02.

Federal law requires the BOP to grant eligible inmates up to a 12-month sentence reduction upon RDAP completion. See 18 U.S.C. § 3621(e); *Lopez v. Davis*, 531 U.S. 230, 241 (2001). Under BOP policy, inmates serving 37 months or more qualify for the full 12-month reduction. Petitioner—sentenced to 78 months—met every eligibility criterion and was approved for early release.

However, on March 31, 2025, the BOP issued a memorandum unlawfully limiting RDAP participants' Residential Reentry Center ("RRC") placements under the Second Chance Act, 18 U.S.C. § 3624(c), to a categorical maximum of four months. This restriction disregarded the statutory requirement for individualized placement determinations. On April 10, 2025, the BOP rescinded the memorandum.

Despite this rescission, the BOP extended Petitioner's release date to February 24, 2026— more than six months after her graduation—without any disciplinary infraction, loss of earned

9

time credits, or legal justification. The BOP has offered no explanation for continuing to apply the effects of a policy it officially abandoned. Once rescinded, any release dates altered under the March 31st policy should have been immediately reversed.

BOP Program Statements 5330.11 and 5331.02 require that once an inmate successfully completes RDAP and is found eligible under § 3621(e), sentence computation must be adjusted to reflect early release. Program Statement 7310.04 further mandates that RRC placement decisions be based on individualized assessments. In Petitioner's most recent team meeting on **July 16, 2025**, she received an updated Individualized Needs Plan – Program Review, FSA Time Credit Assessment, and computation sheet, each confirming her release type as "FSA/RDAP." *See* **Exhibit I.**

Petitioner has committed no disciplinary infractions, forfeited no earned time credits, and received no lawful justification for the delay. The sole basis for withholding her release is the BOP's continued enforcement of a rescinded policy—one that was arbitrary, unlawful, and devoid of any rational connection to statutory authority from its inception. Rather than acknowledge and correct its error, the Bureau has allowed institutional disorganization and leadership turnover to serve as a smokescreen for punishing inmates like Mrs. Shah, who were simply caught in the crossfire of its failed policy experiment. This ongoing reliance on a withdrawn directive is not a mere administrative oversight; it is an intentional and unlawful deprivation of the Petitioner's statutory right to immediate early release under §3621(e).

Nevertheless, the BOP continues to refuse to release her in accordance with the law.

b. **Prolonging Petitioner's incarceration is a violation of the Second Chance Act.**

The Second Chance Act ("SCA"), codified at 18 U.S.C. § 3624(c), was enacted to ensure eligible inmates spend a sufficient portion of the final months of their sentence in community-

10

based facilities or home confinement to "afford the prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *See* 18 U.S.C. § 3624(c). The statute authorizes up to twelve months of such placement and requires the BOP to determine the placement period based on an individualized assessment under the five statutory factors set forth in *18 U.S.C. § 3621(b):*

1. The resources of the facility contemplated;
2. The nature and circumstances of the offense;
3. The history and characteristics of the prisoner;
4. Any statement by the court that imposed the sentence; and
5. Any pertinent policy statement issued by the Sentencing Commission

Petitioner's Individualized Needs Plan – Program Review ("TEAM") dated February 4, 2025, indicated under "RRC/HC" that she would not be placed in Residential Reentry Center or home confinement due to a "management decision," with a note that an SCA review would be completed 17–19 months prior to release. *See* **Exhibit J.** However, in her most recent TEAM dated July 16, 2025, the "RRC/HC Placement" section lists her recommended placement date as August 6, 2025—the date after her RDAP graduation and a date set prior to the issuance of the March 31, 2025, and April 10, 2025, BOP memoranda. *See* **Exhibit I.**

Applying the five-factor review, Petitioner qualifies for immediate SCA placement: (1) Probation has already approved her transfer, and the TEAM notes confirm "available RRCs in her release area," satisfying the facility resources requirement; (2) Her offense and sentence pose no barrier to SCA eligibility; (3) Her history and characteristics—including program compliance and reentry readiness—support community placement; (4) The sentencing court made no statement limiting RRC placement; and (5) There is no pertinent policy statement from the U.S. Sentencing Commission restricting her eligibility.

11

The BOP has thus already assessed Petitioner's eligibility under the Second Chance Act, documented an approved and available placement date, and confirmed that no statutory factor bars her transfer—yet it refuses to release her. By failing to honor its own individualized review and the statutory mandate of the SCA, the BOP is unlawfully prolonging her incarceration in direct violation of 18 U.S.C. §§ 3624(c) and 3621(b).

    c.   **The BOP's failure to accurately calculate Petitioner's cumulative *stacked* sentence reduction according to the First Step Act is contrary to its own policies.**

Since rescinding its prior restrictive guidance, the BOP has issued multiple public statements and directives pledging to maximize pre-release custody for eligible inmates under the First Step Act ("FSA") and Second Chance Act ("SCA"). Yet, its handling of Petitioner's case demonstrates the exact opposite.

In a **May 28, 2025**, press release, Director William K. Marshall, III, directed staff to expand the use of home confinement for eligible individuals under the FSA and SCA, prioritize home confinement, use conditional placement dates, and distinguish between statutory eligibility under each Act. The directive confirmed there is no limit on the number of FSA time credits that may be applied toward home confinement, and that decisions must be based on individual needs, support systems, and readiness for reintegration. *See* **Exhibit K.**

On **June 24, 2025**, the warden at FPC Bryan posted a Trulincs bulletin promising transparency in sentence reduction calculations and stating that "if you are eligible under FSA and/or SCA and meet all criteria, your referral should not be delayed." *See* **Exhibit L.**

A **June 17, 2025**, press release announced a "robust and comprehensive implementation" of both the FSA and SCA—"two bipartisan cornerstones of modern criminal justice reform." The BOP pledged to avoid wasting millions on unnecessary incarceration, reduce strain on

prison resources, and eliminate prolonged burdens on inmates and their families. The Director described the initiative as a "bold shift from years of inaction toward a policy rooted in public safety, fiscal responsibility, and second chances." *See* **Exhibit M.**

On **July 14, 2025**, the BOP launched an FSA Task Force to expedite transfers by "stacking" FSA and SCA time credits, manually calculating placement dates, and prioritizing inmates who qualify for home confinement. Senior Deputy Assistant Director Rick Stover called the effort a "win for everyone." *See* **Exhibit N.**

The contrast between these public commitments versus the Petitioner's reality is stark:

| *BOP's Public Commitments* | *Reality for Petitioner* |
|---|---|
| *May 28, 2025, Directive*: Expand Home confinement, remove cap on time credits, base decisions on needs and readiness. | Despite 871 earned FSA program days, minimum security status, spotless record, RDAP graduation, probation approval for transfer to a district with available RRC resources, exhausted administrative remedies, Petitioner's release date has not been recalculated. |
| *June 24, 2025, Bulletin*: "If you are eligible under FSA and/or SCA and meet all criteria, your referral should not be delayed." | Petitioner's referral has been delayed for **months** without any statutory or policy-based justification. |
| *June 17, 2025, Press Release*: Avoid unnecessary incarceration, save taxpayer dollars, and strengthen families. | Petitioner remains unnecessarily incarcerated, separated from her family, and occupying resources the BOP claims it seeks to conserve. |

13

| | |
|---|---|
| ***July 14, 2025, Task Force***: Expedite transfers by "stacking" FSA and SCA credits. | Stacking has not been applied to Petitioner's sentence, despite clear eligibility under both statutes. |

Mrs. Shah is the very type of inmate these policies were designed to benefit: a minimum-security prisoner with a spotless record, extensive program completion, verified community support, and available reentry resources. The BOP's failure to implement its own stated policies—while publicly claiming robust compliance—demonstrates systemic dysfunction and disregard for statutory mandates.

This persistent pattern of mismanagement, lack of coordination, and institutional incompetence undermines both the integrity of the system and the rights of those in custody. Judicial intervention is necessary to hold the BOP accountable and ensure Petitioner receives the sentence reduction she is entitled to under federal law.

## VI.    CONCLUSION

WHEREFORE, Petitioner respectfully requests that this Court:

1. Grant this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241;

2. Order the Bureau of Prisons to immediately transfer Petitioner to community confinement in accordance with the First Step Act, Second Chance Act, and 18 U.S.C. §§ 3621(b), 3624(c) 3624 (b), and 3621 (e);

3. Grant any other relief that this Court deems just and proper.

***SIGNATURE ON NEXT PAGE***

14

Date: August 15, 2025,                    Respectfully submitted,

                                          _/s/_____
                                          Candace N. Robinson, Esq.
                                          SDTX # 3922060
                                          CNR Law, LLC.
                                          320 Boston Post Road
                                          Suite 180 #1037
                                          Darien, CT 06820
                                          P:860-269-3939
                                          F:860-269-3939
                                          candace@cnrlawfirm.com
                                          *Counsel for Jennifer Shah*

## CERTIFICATE OF SERVICE

I, Candace N. Robinson, Esquire, counsel for Petitioner, Jennifer Shah, do hereby certify that this document, the foregoing Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 was sent via USPS postage prepaid to:

U.S. Attorney's Office for the Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, TX 77002

and by placing same in the United States Mail, First Class Mail, postage prepaid, addressed to the

following:

Jennifer Shah

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

JENNIFER SHAH                                     :           CASE NO.:
    Petitioner,
    v.                                          :

WARDEN, FEDERAL PRISON CAMP-BRYAN   :
    Respondent,

                                                         :

## PROPOSED ORDER

The Court having considered Petitioner, Jennifer Shah's Emergency Petition for Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2241,  the Court hereby **GRANTS** Petitioner's Motion.

It is hereby

**ORDERED** that the Bureau of Prisons immediately transfer Petitioner to Community

Confinement.

**SO ORDERED** this_____ day of ____ 2025

16

# EXHIBIT A

 **U.S. Department of Justice**
Federal Bureau of Prisons .

**"CORRECTED COPY 2/20/2009"**

PROGRAM STATEMENT
OPI         CPD/PSB
NUMBER    P5331.02
DATE       3/16/2009

RULES EFFECTIVE   03/16/2009

# Early Release Procedures Under 18 U.S.C. § 3621(e)

/s/
*Approved*: Harley G. Lappin
Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE

The purpose of this policy is to re-establish criteria and procedures when considering an inmate for early release pursuant to 18 U.S.C. § 3621(e)(2)(B) for successful completion of the Residential Drug Abuse Program.

For more information on procedures for treatment programming see Program Statement 5330.11, **Psychology Treatment Programs**, and the Sallyport site for Correctional Programs Division, Psychology Services Branch, Psychology Treatment Programs.

### a. Summary of Changes

*Directives Rescinded*
P5331.01        Early Release Procedures Under 18 U.S.C. § 3621(e) (9/29/03)

This reissuance incorporates the following modifications:

- Prior and current offenses will be reviewed by the legal staff at the Designation and Sentence Computation Center (DSCC). Offense reviews will no longer be conducted in the regional or in the institution legal offices.

Federal Regulations from 28 CFR are in bold type.
Implementing instructions are in regular type.

- The Regional Psychology Treatment Program Coordinator (RPTP-C), formerly known as the Regional Drug Abuse Program Coordinator, will no longer have oversight authority for provisional approval of early releases.

- Institution staff will no longer be responsible for prior and current offense reviews of early releases.
- The procedures for monitoring early release have been modified, affecting the Drug Abuse Program (DAP) staff, the Unit Team, Transitional Drug Abuse Treatment (TDAT) staff, Community Corrections staff, and the DSCC.
- Inmates may receive a period of early release, not to exceed 12 months, based on the length of sentence imposed by the Court.
- Inmates with a prior conviction of arson or kidnaping are now ineligible for an early release.
- An inmate sentenced as a D.C. Code offender under § 24-403.01 (for an offense committed on or after August 5, 2000) is now eligible for an early release consideration for successful completion of the Residential Drug Abuse Program.

b. **Program Objectives**. The expected results of this program are:

- To define eligibility criteria for early release pursuant to 18 U.S.C. § 3621(e)(2)(B).
- To ensure all eligible inmates are released appropriately from Bureau of Prisons (Bureau) custody pursuant to 18 U.S.C. § 3621(e)(2)(B).
- To define the roles of staff in the procedures for early release pursuant to 18 U.S.C. § 3621(e)(2)(B).

## 2. BACKGROUND

Title 18 U.S.C. § 3621(e)(2)(B) allows the Director of the Bureau of Prisons to permit inmates who complete the Residential Drug Abuse Program (RDAP) to receive up to 12 months early release from custody. This Program Statement is to be read in conjunction with the Program Statement **Psychology Treatment Programs**.

## 3. DEFINITION OF TERMS.

- Eligible – to meet the criteria for an early release as defined in Bureau policy.
- Ineligible – failure of any RDAP component, or to be unable to meet the criteria for an early release as defined in Bureau policy.

## 4. § 550.55 ELIGIBILITY FOR EARLY RELEASE.

This section lists the criteria that renders an inmate *eligible* for § 3621(e) Conditional Release status.

**(a) Eligibility. Inmates may be eligible for early release by a period not to exceed twelve months if they:**

(1) have a diagnosis for a substance use disorder.  The inmate must have a substantiated diagnosis for a substance use disorder.

**(2) § 550.55(a)(1) Were sentenced to a term of imprisonment under either:**

**(i) 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense;** or, i.e., an inmate who committed a federal offense on or after November 1, 1987, after the effective date of the Sentencing Reform Act of 1987, also known as "new law."

"Old law" inmates who are Parole Eligible, may, at the U.S. Parole Commission's (USPC) discretion, be considered for an advanced release date through an award of Superior Program Achievement (SPA).

**(ii) D.C. Code § 24-403.01 for a nonviolent offense, meaning an offense other than those included within the definition of "crime of violence" in D.C. Code § 23-1331(4); and** (Section 24-403.01 pertains to inmates whose offenses were committed on or after August 5, 2000);

**(3) § 550.55(a)(2) Successfully complete a RDAP, as described in § 550.53, during their current commitment.**   Successful completion means:

(a) completion of the unit-based RDAP in the institution;

(b) when applicable, participation in follow-up treatment while in general population for 12 months or until release, whichever comes first; and

(c) completion of community Transition Drug Abuse Treatment (TDAT) while residing in a Residential Reentry Center (RRC) or on home confinement; and

(4) are Financial Responsibility Program (FRP) compliant. See 28 CFR § 545.10.

**5.  § 550.55(b) INMATES NOT ELIGIBLE FOR EARLY RELEASE.**

**As an exercise of the Director's discretion, the following categories of inmates are not eligible for early release:**

**(1) Immigration and Customs Enforcement detainees;**

**(2) Pretrial inmates;**

**(3) Contractual boarders (for example, State or military inmates);**

**(4) Inmates who have a prior felony or misdemeanor conviction for:**

(i) Homicide (including deaths caused by recklessness, but not including deaths caused by negligence or justifiable homicide);

(ii) Forcible rape;

(iii) Robbery;

(iv) Aggravated assault;

(v) Arson;

(vi) Kidnaping; or

(vii) An offense that by its nature or conduct involves sexual abuse offenses committed upon minors;

(5) Inmates who have a current felony conviction for:

(i) An offense that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another;

(ii) An offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device);

(iii) An offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another; or

(iv) An offense that, by its nature or conduct, involves sexual abuse offenses committed upon minors;

(6) Inmates who have been convicted of an attempt, conspiracy, or other offense which involved an underlying offense listed in paragraph (b)(4) and/or (b)(5) of this section; or

(7) Inmates who previously received an early release under 18 U.S.C. § 3621(e).

6. § 550.55(c) EARLY RELEASE TIME-FRAME.

(1) Inmates so approved may receive early release up to twelve months prior to the expiration of the term of incarceration, except as provided in paragraphs (c)(2) and (3) of this section.

**(2) Under the Director's discretion allowed by 18 U.S.C. § 3621(e), we may limit the time-frame of early release based upon the length of sentence imposed by the Court.**

This policy enacts the § 3621(e) early release based on an inmate's sentence length. This rule will be effective 03/16/2009. Those inmates who are participating in or have completed the Residential Drug Abuse Program (RDAP) before 03/16/2009 are not affected by this rule.

## 7. PROCEDURE TO DETERMINE § 3621(e) EARLY RELEASE ELIGIBILITY

The DAP staff (initial review) and DSCC legal staff (offense review) play key roles in identifying and documenting an inmate's eligibility for early release.

a. **Drug Abuse Program Staff, Initial Review**. If the Drug Abuse Program Coordinator (DAPC) determines the inmate is qualified for participation in the RDAP, he or she will review SENTRY to determine if the inmate:

- has received a prior early release under § 3621(e);
- is a contract boarder (e.g., a state or military inmate);
- is a pretrial offender;
- has a detainer that will prohibit completion of the community treatment component of the RDAP;
- committed his/her federal offense before November 1, 1987; or
- committed his/her D.C. offense before August 5, 2000.

If the DAPC determines the inmate meets any of the above conditions, the inmate is NOT ELIGIBLE for a § 3621(e) early release and no further review is required. The DAPC will then meet with the inmate to notify him or her of his or her ineligibility for an early release. The DAPC will also:

- have the inmate sign the *Notice of RDAP Qualification* form (BP-A0941).
- forward the *Notice of RDAP Qualification* form to the Unit Team for placement in the inmate's Central File; and
- enter the appropriate early release eligibility assignment into SENTRY.

Note: The DAPC can notify the inmate of his/her early release ineligibility and have the inmate sign the *Notice of RDAP Qualification* form at the same time.

If the inmate is not excluded from eligibility upon the DAPC's initial review, the inmate will require a § 3621(e) offense review by the DSCC legal staff. The DAPC or designee will submit (via GroupWise) a *Request for § 3621(e) Offense Review* form in a timely manner.

The DAPC or designee will also forward an electronic copy of the Judgment and Commitment Order (J&C) and the Presentence Investigation Report (PSR) if the DSCC does not already have

one. To determine whether the DSCC has a copy of an inmate's J&C file (which includes the PSR), the DAPC or designee will check the sentence computation data function in SENTRY. If the "DSC" last updated the computation, the DSCC has a copy of the J&C file, and there is no need to send a copy of the same with the *Request for § 3621(e) Offense Review* form. However, if an institution last updated the computation, the DSCC does not have a copy of the J&C file. In those cases, the DAPC or designee will send a scanned copy of the J&C file with the *Request for § 3621(e) Offense Review* form. The DAPC will place the inmate's name and register number in the subject line of the email to DSCC legal staff.

b. **Designation and Sentence Computation Center, Offense Review**. Upon receipt of the *Request for § 3621(e) Offense Review* form and the J&C file, the DSCC legal staff will ordinarily have 30 working days to determine an inmate's early release eligibility status based on a review of the inmate's current offense and prior convictions. The DSCC legal staff will review current and prior offenses for both U.S. Code and D.C. Code felony offenders.

After completing the offense review, a legal staff member will complete and sign the *Request for § 3621(e) Offense Review* form. Signature authority may not be delegated below the attorney level.

Designated DSCC legal staff, upon completion of the review, will notify the DAPC of the result of the review by forwarding the signed *Request for § 3621(e) Offense Review* form.

## 8. ASSIGNMENT OF § 3621(e) STATUS

Upon receipt of a signed *Request for § 3621(e) Offense Review* form from the DSCC legal staff, the DAPC or designee will enter the appropriate early release eligibility code into SENTRY and:

- have the inmate sign the *Notice of RDAP Qualification* form;
- forward the signed *Notice of RDAP Qualification* form to the unit team; and
- enter into SENTRY the appropriate § 3621(e) early release eligibility assignment. If the inmate declines the RDAP after hearing of his or her early release eligibility status, enter into SENTRY the appropriate § 3621(e) assignment signifying the inmate's declination.

## 9. ASSIGNMENT OF § 3621(e) EARLY RELEASE CONDITIONAL DATE

a. **Drug Abuse Program Coordinator**. Upon a qualified inmate's entry into the RDAP, the DAPC, or designee, will:

- enter into SENTRY the appropriate participation assignment; and
- within 15 working days, forward a *Notice of § 3621(e) Date* form (BP-A0764) to the DSCC team responsible for the inmate's sentence computation requesting computation of a § 3621(e) conditional release method date, with a copy to the unit team and the Correctional Systems Department (CSD).

**b. DSCC Staff.** Within 15 working days of the DSCC staff receiving the *Notice of § 3621(e) Date* form, computation staff will enter the estimated completion date into the § 3621(e) CRPS MN field (Complete Residential Program), and recalculate the sentence. The corresponding satisfaction/release method will be § 3621(e) COND (§ 3621E Conditional).

## 10. LENGTH OF SENTENCE

Following completion of Transitional Drug Abuse Treatment (TDAT), inmates found to be eligible for an early release under 18 U.S.C. § 3621(e) may receive that early release *based upon the length of their sentence*, as detailed in the table below.

| Sentence Length | Early Release Time-Frame |
|---|---|
| 30 MONTHS or LESS | No more than 6 months |
| 31-36 MONTHS | No more than 9 months |
| 37 MONTHS OR MORE | No more than 12 months |

The early release time-frame reductions shown on the table are not pro-rated by days. For example, if an inmate's sentence is 36 months and any number of days, 9 months is the maximum sentence reduction allowed, whether the inmate's sentence is 36 months and 0 days, or 36 months and 30 days.

Any change in current offense sentence length as imposed by order of the Court will result in a recalculation of sentence computation and provisional incentive. For example, a 36-month sentence reduced to a 24-month sentence will result in no more than a 6-month early release.

## 11. MONITORING OF EARLY RELEASE ELIGIBILITY STATUS

An inmate may require changes to, or lose, his or her early release eligibility at any time as a result of:

- information that renders the inmate ineligible, see section 5; or
- identification of a previous error.

Chapter 2 of the Program Statement **Psychology Treatment Programs** contains specific information on the circumstances that may lead to expulsion and loss of early release. DAP staff, designated DSCC staff, Unit Team staff, TDAT staff, and Community Corrections staff play key roles in identifying, monitoring and documenting an inmate's eligibility for early release. This process involves the steps described below.

**a. The DAPC.** The DAPC, or designee, in all Bureau institutions will review all eligible inmate DRG assignments bi-monthly and prior to the inmate receiving a DAP COMP or FOL COMP SENTRY assignment.

(1) **Completion of the Unit-Based RDAP Component.** If the inmate completes the unit-based component (see **Psychology Treatment Programs**) of the RDAP, the local DAPC, or designee, will:

- replace the SENTRY participation assignment to completion assignment; and
- add a SENTRY assignment for follow-up treatment indicating the inmate is enrolled in institutional transitional aftercare.

(2) **Additional Completion Time in RDAP.** If an eligible inmate is determined, for clinical reasons (e.g., difficulty meeting treatment goals) or administrative reasons (e.g., writ, medical, institutional need), to require additional time to complete the RDAP, the DAPC, or designee, will immediately forward the *Notice of § 3621(e) Date* form to the CSD, Unit Team, and the DSCC.

(3) **Change in Early Release Status, Ineligible to Eligible.** If the DAPC is notified by the Unit Team of a change in circumstance of an "ineligible" inmate (e.g., detainer dropped, court case resolved, etc.), the DAPC, or designee, will:

- review the inmate's case to determine if there are any other exclusionary criteria that would maintain the inmate's ineligibility for early release;
- immediately replace the SENTRY DRG assignment of INELIGIBLE to ELIGIBLE, if no other exclusionary criteria exist; and
- forward a *Notice of §3621(e) Date* form to the CSD, the Unit Team, and the DSCC requesting appropriate change to the § 3621(e) conditional release method date.

(4) **RDAP Expel/Fail/Withdraw.** If an early release eligible inmate is expelled or withdraws from the RDAP (e.g., significant failure to meet treatment goals, significant program disruption, receives an incident report for misconduct related to drugs, alcohol, and/or act(s) of violence), the DAPC or designee will:

- complete Section III of the *Change in RDAP and § 3621(e) Status* form (BP-A0767);
- notify the inmate and send the *Change in RDAP and § 3621(e) Status* form electronically to the CSD, the Unit Team and the DSCC team responsible for the inmate's sentence computation;
- replace the SENTRY assignment of participation with program failure for expulsion or failure, as appropriate; and
- when appropriate, replace the SENTRY assignments from § 3621(e) eligible to ineligible.

If an early release eligible inmate is expelled from the program based on an incident report for misconduct related to drugs, alcohol and/or act(s) of violence and *is later found not guilty* by the DHO, the DAPC will conduct a meeting with all treatment staff to determine if the inmate, based

on sound clinical practice and the good of the treatment community, is clinically appropriate to be placed back into the program, and if so:

- reinstate the inmate into the program;
- replace the SENTRY assignment of failure due to expulsion with that of participation;
- replace the SENTRY assignment noting ineligible to eligible;
- complete and forward the *Notice of § 3621(e) Date* form to the CSD, the Unit Team, and the DSCC team responsible for the inmate's sentence computation requesting any appropriate change to the § 3621 (e) conditional release method date; and
- notify the inmate.

**(5) Follow-Up Treatment Complete.** If an eligible inmate completes the required institutional follow-up component of RDAP, upon return to general population, the DAPC, or designee, will:

- replace the SENTRY DRG assignment of follow-up participation with follow-up completion; and
- review the inmate's PDS notes and review SENTRY to ensure the inmate is still eligible for the early release benefit.

**(6) Failure/Withdrawal of Follow-Up Treatment.** If an eligible inmate fails or withdraws from the follow-up component of RDAP, the DAPC, or designee, will:

- complete Section III of the *Change in RDAP and § 3621(e) Status* form;
- send this form electronically to the Unit Team, the CSD, and the DSCC team responsible for the inmate's sentence computation;
- replace the SENTRY assignment for follow-up participation to the appropriate follow-up fail assignment;
- replace the SENTRY assignment of DAP completion to DAP failure, final outcome; and
- replace the SENTRY assignment of eligible to ineligible for a § 3621(e) release.

**(7) Completion of All RDAP Components in the Institution.** If an eligible inmate has completed all institution components of RDAP (i.e., the unit-based program and the follow-up treatment program) and is later determined to require a change in his or her early release status (e.g., detainer removed or lodged, found guilty by the DHO for misconduct, especially as related to drugs, alcohol, and/or act(s) of violence), the Unit Team will notify the DAPC, via e-mail, of the inmate's change in status and the DAPC will then complete the *Change in RDAP and § 3621 (e) Status* form.

The DAPC (or designee) will review the inmate's case to determine if the inmate is or is not eligible for an early release. The DAPC will document the outcome of this review and sign and forward the *Change in RDAP and § 3621(e) Status* form to the CSD, and the DSCC team responsible for the inmate's sentence computation.

**(8)  Changes in Inmate Early Release Status.**  Any and all changes in an inmate's early release status will be documented in the Psychology Data System (PDS).  If an inmate is removed from the program, the circumstances for removal (e.g., expulsion, incomplete, withdrawal) are to be documented as a Discharge Note in PDS.

**(9)  Unit Team Final § 3621(e) Review.**  Before a § 3621(e) eligible inmate is processed for transfer to an RRC, the Unit Team will complete the *Unit Team Final Review* form (BP-A0766). Ordinarily, this will occur 30 days before the inmate's RRC transfer.  This form ensures that all criteria for early release have been met.  In conjunction with this review the DAPC, or designee, is to review SENTRY to determine if:

- the inmate has completed all components of the unit-based RDAP, in a unit set apart from the general population for no less than nine months; and
- the inmate has completed the follow-up component of the RDAP.

**b.  The Unit Team.**  Typically, the Unit Team's review of the inmate's status will be in conjunction with regularly scheduled program reviews, preparation of release paperwork, and RRC referrals.

**(1)  Change in Early Release Eligibility Status/DAP WAIT or DAP PART.**  If an eligible inmate's early release eligibility status requires change (e.g., detainers removed/added, noncompliance with FRP), the Unit Team will immediately notify the DAPC via e-mail.

**(2)  Change in Early Release Eligibility Status/RDAP Complete.**  If an eligible inmate has completed all institution components of RDAP (i.e., the unit-based program and the follow-up treatment program) and is later determined to require a change in his/her early release status (e.g., detainers removed/added, found guilty by the DHO for misconduct related to drugs, alcohol, and/or act(s) of violence, noncompliance with FRP), the Unit Team will immediately notify the DAPC via e-mail.  The DAPC will:

- complete the *Change in RDAP and § 3621(e) Status* form;
- provide a copy of the *Change in RDAP and § 3621(e) Status* form to the inmate; and
- forward the *Change in RDAP and § 3621(e) Status* form to the Unit Team, the CSD, and the DSCC team responsible for the inmate's sentence computation.

**(3)  § 3621(e) Conditional Release.**  The Unit Team will use the *Notice of § 3621(e) Date* form in preparing the RRC packet for the Warden's approval.  Upon approval, the RRC packet will be forwarded to Community Corrections.

**(4)  Unit Team Final Review.**  Before an eligible inmate is processed for early release to an RRC, the Unit Manager or designee will complete the *Unit Team Final Review* form. Ordinarily, this will occur 30 days before RRC transfer or release.  This review ensures that all criteria for early release have been met. If any SENTRY codes have been replaced with fail or ineligible codes, the inmate *is not eligible* for an early release.

P5331.02  3/16/2009   Federal Regulations: bold type.   Implementing instructions: regular type.        Page 10

**(5) RRC Incident Report.** If a previously eligible inmate was returned from RRC placement due to an incident report and that incident report is later expunged by the Discipline Hearing Officer, the Unit Team will:

- notify the DAPC immediately and request the SENTRY failure assignment be replaced with the completion assignment, and the SENTRY appropriate early release eligibility assignment is entered; and
- complete the *Notification of RRC Placement Date* form (BP-A0628) and send it to the CSD and the appropriate DSCC computation staff.

**c. DSCC Computation Staff.** Ordinarily, the DSCC's role is to ensure the Sentence Monitoring and Computation data for an inmate is appropriate and current at all times.

**(1) Changes in Conditional Release Date.** Any changes required in the computation of a § 3621(e) Conditional Release date will be made by DSCC upon receipt of one of the following Forms:

- the *Notice of § 3621(e) Date* form;
- the *Change in RDAP and § 3621(e) Status* form; or
- the *Notification of RRC Placement Date* form.

The DSCC staff will make the appropriate computation changes within 15 working days.

**(2) RRC Placement Date.** When the inmate has been accepted for RRC placement, the *Notification of RRC Placement Date* form will be sent to the appropriate DSCC computation staff and the CSD by the Warden. Upon receipt of this form, the designated DSCC staff will enter the § 3621E CCPS (complete community program) date into the inmate's sentence computation within 15 working days. DSCC staff will recalculate the sentence to show a release date via RDAP early release pursuant to § 3621(e).

**(3) Request to Delay, Remove or Reinstate Early Release.** When notified by the Transitional Drug Abuse Treatment Coordinator (T-DATC) via the *Request to Delay, Remove or Reinstate Early Release* form (BP-A0768), the DSCC will recalculate the sentence computation within 15 working days of receipt of the form. The DSCC will enter a "/" in the § 3621E CCPS (complete community program) date field, SENTRY will set the § 3621E REL date to "/", and the inmate's projected satisfaction/release date will be set to his/her projected Statutory Release Date (SRD), and the corresponding satisfaction/release method GCT REL.

**d. TDAT and Community Corrections Staff.** **§ 550.55(c)(3) If inmates cannot fulfill their community-based treatment obligations by the presumptive release date, we may adjust provisional release dates by the least amount of time necessary to allow inmates to fulfill their treatment obligations.** In practice, it is the T-DATC who adjusts all provisional release dates.

(1) **Transitional Drug Abuse Treatment Coordinator**. When an inmate is placed in community-based treatment, the T-DATC monitors the inmate's treatment. Therefore, all recommendations for changes in an inmate's early release date must be initiated by the T-DATC. This includes delays or removal of early release for treatment related issues, escapes from the RRC, RRC failures, disallowance of Good Conduct Time by the Discipline Hearing Officer, etc. For example, if an inmate fails the RRC, the CCM will contact the T-DATC via GroupWise to request a change in the inmate's status.

Additional guidance on delaying and/or removing early release is contained in the Program Statement on Community Transitional Drug Abuse Treatment.

(2) **T-DATC Review**. The T-DATC is responsible for reviewing all requests to delay or remove an inmate's early release date. Supporting documentation should be included in the review. The T-DATC will approve or disapprove the request.

(3) **Request to Delay, Remove or Reinstate Early Release.** If the T-DATC decides to delay or remove early release, he or she will complete the *Request to Delay, Remove or Reinstate Early Release* form, scan the document, and submit it to the appropriate team at the DSCC. If the staff at the DSCC have not calculated/assumed the related sentence computation, they will need to contact the parent facility for an electronic version of the Judgment and Commitment file to carry out the change in the release date.

(4) **SENTRY Assignments**. All SENTRY assignments should be updated by the TDAT and/or community corrections staff as such changes occur. At no time should an inmate have a failure SENTRY assignment while maintaining an early release date. This is to be monitored closely by the TDAT, community corrections, and the DSCC.

(5) **Reinstatement of § 3621(e) Date**. If an inmate has received an incident report that is later expunged by the DHO, the appropriate staff, T-DATC or DAPC, depending on the inmate's location, will complete the *Change in RDAP and § 3621(e) Status* form or the *Request to Delay, Remove or Reinstate Early Release* form and immediately scan the form and send it to the DSCC to reinstate the inmate's early release. Once the inmate begins TDAT, the T-DATC will decide if the inmate's provisional early release date will be delayed. Delays of an early release date will allow the inmate to complete TDAT.

(6) **Redesignation.** If it is determined that the inmate must be redesignated, the CCM will review the case and submit a redesignation request to the DSCC.

## 12. CERTIFYING EARLY RELEASE

Upon an inmate's completion of TDAT, the T-DATC must certify to the DSCC that the inmate has completed all requirements of RDAP. This certification assures the inmate has successfully completed all of the requirements that earn him or her an early release. The T-DATC will complete the *Transitional Drug Abuse Treatment § 3621(e) Release Date Confirmation* form

(BP-A0910), scan the document, and submit it to the appropriate team at the DSCC. (See Program Statement on Community Transitional Drug Abuse Treatment for steps to certifying early release.)

**REFERENCES**

*Program Statements*

P5162.02      Definition of Term - Crimes of Violence (7/24/95)
P5162.04      Categorization of Offenses (10/9/97)
P5270.07      Inmate Discipline and Special Housing Units (1/09/03)
P5310.12      Psychology Services Manual (3/7/95)
P5330.11      Psychology Treatment Programs (3/16/09)
P5800.15      Correctional Systems Manual (1/1/09)
P7430.02      Community Transitional Drug Abuse Treatment (4/14/99)

*ACA  Standards*

■ Standards for Adult Correctional Institutions, 4th Edition: 4-4441
■ Performance Based Standards for Adult Local Detention Facilities, 4th Edition: 4-ALDF-5A-08

*Other Standards*

American Psychological Association Ethical Principles of Psychologists and Code of Conduct, 3-21-02.

*Forms*

All forms may be found on Sallyport.
*Notice of RDAP Qualification* (BP-A0941)
*Request for § 3621(e) Offense Review* (BP-A0942)
*Notice of  § 3621(e) Date* (BP-A0764)
*Change in RDAP and § 3621(e) Status* (BP-A0767)
*Unit Team Final Review* (BP-A0766)
*Notification of RRC Placement Date* (BP-A0628)
*Request to Delay, Remove or Reinstate Early Release* (BP-A0768)
*Transitional Drug Abuse Treatment § 3621(e) Release Date Confirmation* (BP-A0910)

*Records Retention*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport and BOPDOCS.

# EXHIBIT B

An official website of the United States government.   Here's how you know

# Second Chance Act (SCA) Placements

Previous Guidance rescinded



Updated Thursday, April 10, 2025 at 4:12 PM EDT

**(FBOP) -** On March 31, 2025, the Federal Bureau of Prisons (BOP) issued a memorandum announcing limitations on Second Chance Act (SCA) placements in Residential Reentry Centers. Based on concerns about how these limitations impact the population, BOP will not proceed with the planned changes to limit SCA placement to 60 days. A new memo was issued today, April 10, 2025, rescinding the previous guidance.

# EXHIBIT C

PAGE AND EXHIBIT #1, EXHIBIT #2

BRY 1330.18

04/18/2014

Attachment A

FEDERAL PRISON CAMP
BRYAN, TEXAS

INFORMAL RESOLUTION FORM

NOTICE TO INMATE: You are advised that prior to receiving and filing a Request for Administrative Remedy (Form BP-229(13)), you MUST attempt to informally resolve your complaint through your Unit Counselor. Briefly state your complaint below and list what efforts you have made to resolve your complaint informally. Also, please state names of staff contacted.

Date Informal Resolution Form issued by Unit Counselor 5/12/25

Inmate Name **SHAH, J.** Number **37357-509** Unit **RDAP**

1) INMATE'S COMMENTS: (Inmate MUST FILL OUT items 1, 2, 3, and signature block) **AS PER THE RRC/HC DOCUMENTS I SIGNED ON 3/27/25, I WAS ADVISED I WOULD BE RELEASED TO RRC/HC THE DAY AFTER I GRADUATED RDAP, 8/05/25. UNFORTUNATELY, MY RRC/HC PAPERWORK WAS THEN CAUGHT UP IN THE VACUUM → (SEE ATTACHED CONTINUATION PAGE AND EXHIBIT #1 & #2)**

2) Efforts made by inmate to informally resolve **4/24/25: SPOKE WITH MS. OAKS @ OPEN HOUSE 4/30/25 @ APPX. 11:36 AM CST REQUESTED TO MEET W/ DR. LAGUNA VIA HER CLERK AS PER RDAP PROTOCOL/PROCEDURE.**

3) Names of staff inmate contacted **MS. OAKS, RDAP CASE MANAGER / MR. PAYNE, UNIT COUNSELOR DR. LAGUNA, RDAP COORD.**

Date returned to Unit Counselor **5/15/25**

_____ Inmate Signature

**37357-509**
Number

UNIT COUNSELOR'S COMMENTS:

Efforts made to informally resolve and staff contacted _____

_____
_____
_____
_____

Date informally resolved _____
        OR
Date BP-9 issued _____        Signature, Unit Counselor

DISTRIBUTION:
  I.  If complaint is informally resolved, forward original to the Unit Secretary.
  II. If complaint is NOT informally resolved, forward original attached to BP-9 form to the Administrative Remedy Coordinator.

✱ 5/15/25 @ 8:55 AM CST MR. PAYNE, COUNSELOR, GAVE ME BACK MY "INFORMAL RESOLUTION FORM" AND "STATED HE IS MAKING THE EXEC. DECISION TO ISSUE ME A #10 BEHIND THIS ISSUE

... OF TWO COMPETING BOP CENTRAL OFFICE MEMOS; A 3/31/25 MEMO LIMITING THE NUMBER OF DAYS ONE COULD APPLY TO RRC/HC VIA THE SECOND CHANCE ACT (SCA), AND ONE ISSUED 4/10/25, OFFICIALLY RESCINDING ANY AND ALL LIMITATIONS ON SCA ALLOCATIONS. SINCE I AM STILL SHOWING AN RRC/HC RELEASE DATE OF 2/24/26 (THIS IS OVER SIX MONTHS LATER THAN MY ORIGINAL RRC/HC DATE), I AM FORMALLY REQUESTING MY ORIGINAL RRC/HC DATE OF 8/6/25, BE REINSTATED. SINCE I HAVE EARNED ONE YEAR OF SCA CREDIT TOWARD MY RRC/HC PLACEMENT SET TO BEGIN 8/6/25, AND MY PROJECTED RELEASE DATE IS 8/30/26 INCLUDES 18 U.S.C. 3621(e) CREDIT, THIS CORRECTION WILL ENSURE I AM NOT UNFAIRLY INCARCERATED PAST THE DATE ALLOWED BY SCA AND THE BOP PROGRAM STATEMENTS RELATED TO COMMUNITY TRANSITIONAL DRUG ABUSE TREATMENT, RRC ELIGIBILITY, AND THE APPLICATION OF FSA EARNED CREDITS.

ADDITIONALLY, I HAVE BEEN ADVISED I WILL NOT HAVE AN OPPORTUNITY TO APPLY ANY ADDITIONAL FSA TO EXPEDITE MY RRC/HC PLACEMENT SINCE THE EARLIEST I CAN BE PLACED IN RRC/HC IS 8/6/25; ie. I MUST FIRST GRADUATE RDAP ON 8/5/25. THEREFORE, I AM REQUESTING MY FSA TIME CREDITS CURRENTLY BEING BANKED BE APPLIED TO FULFILL THE TERM OF MY RRC/HC PLACEMENT AND/OR FULFILL THE TERM OF MY SUPERVISED RELEASE. I AM ALSO REQUESTING CONFIRMATION THAT I WILL CONTINUE TO EARN 15 DAYS PER MONTH OF FSA TIME CREDITS WHILE IN HHC/HC PLACEMENT, WHICH WILL THEN BE APPLIED TO FULFILL THE TERM OF SUCH PLACEMENT AND/OR TO FURTHER REDUCE MY TERM OF SUPERVISED RELEASE.

* EXHIBITS #1: FSA TIME CREDIT ASSESSMENT REPORT 5/5/25 — PG1.
* EXHIBIT #2: FSA TIME CREDIT ASSESSMENT REPORT 5/5/25 — PG2

(EXHIBIT #1)

## FSA Time Credit Assessment
Register Number:37357-509, Last Name:SHAH

**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

Register Number....: 37357-509

Inmate Name

  Last.............: SHAH

  First............: JENNIFER

  Middle...........:

  Suffix...........:

Gender.............: FEMALE

Start Incarceration: 02-17-2023

Responsible Facility: BRY

Assessment Date.....: 05-05-2025

Period Start/Stop...: 02-17-2023 to 05-05-2025

Accrued Pgm Days....: 808

Disallowed Pgm Days.: 0

FTC Towards RRC/HC..: 15

FTC Towards Release.: 345

Apply FTC to Release: Yes

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|-----------|----------|
| 02-17-2023 | 09-13-2023 | accrue | 208 |

  Accrued Pgm Days...: 208

  Carry Over Pgm Days: 0

  Time Credit Factor.: 10

  Time Credits.......: 60

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|-----------|----------|
| 09-13-2023 | 05-05-2025 | accrue | 600 |

  Accrued Pgm Days...: 600

  Carry Over Pgm Days: 28

  Time Credit Factor.: 15

  Time Credits.......: 300

--- FSA Assessment(s) ---

| # | Start | Stop | Assignment | Asn Start | Factor |
|---|-------|------|-----------|-----------|--------|
| 001 | 02-17-2023 | 03-17-2023 | R-MIN | 03-23-2023 12:04 | 10 |
| 002 | 03-17-2023 | 09-13-2023 | R-MIN | 03-23-2023 12:04 | 10 |
| 003 | 09-13-2023 | 03-11-2024 | R-MIN | 09-05-2023 11:13 | 15 |
| 004 | 03-11-2024 | 09-07-2024 | R-MIN | 02-21-2024 10:04 | 15 |
| 005 | 09-07-2024 | 03-06-2025 | R-MIN | 08-08-2024 09:57 | 15 |
| 006 | 03-06-2025 | 09-02-2025 | R-MIN | 01-29-2025 13:45 | 15 |

05-05-2025

(1)

Assessment# -2143598527

( EXHIBIT #2 )

## FSA Time Credit Assessment

Register Number:37357-509, Last Name:SHAH

**U.S. DEPARTMENT OF JUSTICE**　　　　　　　　　　　**FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ------------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
05-05-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 08-30-2027
Projected Release Method: 3621E CMPL
FSA Projected Release Date: 09-19-2026
FSA Projected Release Method: FSRDAP REL
Date 3621E CRP: 08-05-2025
FSA Conditional Release Date: 09-19-2026
SCA Conditional Placement Days: 365
SCA Conditional Placement Date: 09-19-2025
FSA Conditional Placement Days: 150
FSA Conditional Placement Date: 04-22-2026
Conditional Transition To Community Date: 08-06-2025 (3621E CRP Adjustment From 04-22-2025)

# EXHIBIT D

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed. submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **SHAH, JENNIFER K.**    **37357-509**    **RDAP**    **FPC BRYAN**
LAST NAME. FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

I AM FORMALLY REQUESTING MY ORIGINAL RRC/HC RECOMMENDED DATE OF 8/6/25 BE RECONSIDERED. I HAVE EARNED ONE YR OF SCA CREDIT TOWARD MY RRC/HC PLACEMENT SET TO BEGIN 8/6/25, & MY PROJECTED RELEASE DATE IS 8/30/26, WHICH INCLUDES 18 U.S.C. 3621(e) CREDIT. THIS CORRECTION WILL ENSURE I AM NOT UNFAIRLY INCARCERATED PAST THE DATE ALLOWED BY SCA & THE BOP PROGRAM STATEMENT RELATED TO COMMUNITY TRANSITIONAL DRUG ABUSE TREATMENT, RRC ELIGIBILITY & THE APPLICATION OF FSA EARNED CREDIT

PLEASE SEE ATTACHED CONTINUATION PAGE AS WELL AS FOLLOWING EXHIBITS:

     EXHIBIT #1 FSA TIME CREDIT SHEET

* ON 5/15/25 MR. PAYNE, COUNSELOR FPC BRYAN GAVE ME BACK MY #8 ADMIN REMEDY AND STATED HE IS MAKING THE EXEC. DECISION TO ISSUE ME A #10 BECAUSE HE SAID THIS ISSUE CANNOT BE RESOLVED AT FPC BRYAN AND NEEDS TO GO DIRECTLY TO REGION. ~~GO TO~~ (I INCLUDED THE ORIGINAL #8 AND ATTACHMENTS SUBMITTED.)

**5/22/25**
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

---

DATE      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE      CASE NUMBER: _____

**Part C - RECEIPT**

     CASE NUMBER: _____

Return to: _____
LAST NAME. FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

✱ ✱ EXHIBIT #2

BRY 1330.18

04/18/2014

Attachment A

## FEDERAL PRISON CAMP
## BRYAN, TEXAS

### INFORMAL RESOLUTION FORM

**NOTICE TO INMATE:** You are advised that prior to receiving and filing a Request for Administrative Remedy (Form BP-229(13)), you **MUST** attempt to informally resolve your complaint through your Unit Counselor. Briefly state your complaint below and list what efforts you have made to resolve your complaint informally. Also, please state names of staff contacted.

Date Informal Resolution Form issued by Unit Counselor **5/12/25 ✱**

Inmate Name **SHAH, J.**       Number **37357-509** Unit **RDAP**

1) **INMATE'S COMMENTS:** (Inmate **MUST FILL OUT** items 1, 2, 3, and signature block) **AS PER THE RRC/HC DOCUMENTS I SIGNED ON 3/27/25, I WAS ADVISED I WOULD BE RELEASED TO RRC/HC THE DAY AFTER I GRADUATED RDAP, 8/05/25. UNFORTUNATELY, MY RRC/HC PAPERWORK WAS THEN CAUGHT UP IN THE VACUUM ➔ (SEE ATTACHED CONTINUATION PAGE AND EXHIBIT #1 & #2)**

2) Efforts made by inmate to informally resolve **4/29/25: SPOKE WITH MS. OAKS @ OPEN HOUSE 4/30/25 @ APPX. 11:30 AM CST REQUESTED TO MEET W/ DR. LAGUNA VIA THE CLERK AS PER RDAP PROTOCOL/PROCEDURE.**

3) Names of staff inmate contacted **MS. OAKS, RDAP CASE MANAGER / MR. PAYNE, UNIT COUNSELOR DR. LAGUNA, RDAP COORD.**

Date returned to Unit Counselor **5/15/25**

Inmate Signature _____       Number **37357-509**

### UNIT COUNSELOR'S COMMENTS:

Efforts made to informally resolve and staff contacted _____

_____

_____

_____

_____

Date informally resolved _____

OR                                     _____

Date BP-9 issued _____          Signature, Unit Counselor

**DISTRIBUTION:**
  I.  If complaint is informally resolved, forward original to the Unit Secretary.
  II. If complaint is **NOT** informally resolved, forward original attached to BP-9 form to the Administrative Remedy Coordinator.

✱ 5/15/25 @ 8:55 AM CST MR. PAYNE, COUNSELOR, GAVE ME BACK MY #8 - "INFORMAL RESOLUTION FORM" AND "STATED HE IS MAKING THE EXEC. DECISION TO ISSUE

... OF TWO COMPETING BOP CENTRAL OFFICE MEMOS; A 3/31/25 MEMO LIMITING THE NUMBER OF DAYS ONE COULD APPLY TO RRC/HC VIA THE SECOND CHANCE ACT (SCA), AND ONE ISSUED 4/10/25, OFFICIALLY RESCINDING ANY AND ALL LIMITATIONS ON SCA ALLOCATIONS. SINCE I AM STILL SHOWING AN RRC/HC RELEASE DATE OF 2/24/26 (THIS IS OVER SIX MONTHS LATER THAN MY ORIGINAL RRC/HC DATE), I AM FORMALLY REQUESTING MY ORIGINAL RRC/HC DATE OF 8/6/25, BE REINSTATED. SINCE I HAVE EARNED ONE YEAR OF SCA CREDIT TOWARD MY RRC/HC PLACEMENT SET TO BEGIN 8/6/25, AND MY PROJECTED RELEASE DATE IS 8/30/26 INCLUDES 18 U.S.C. 3621(e) CREDIT, THIS CORRECTION WILL ENSURE I AM NOT UNFAIRLY INCARCERATED PAST THE DATE ALLOWED BY SCA AND THE BOP PROGRAM STATEMENTS RELATED TO COMMUNITY TRANSITIONAL DRUG ABUSE TREATMENT, RRC ELIGIBILITY, AND THE APPLICATION OF FSA EARNED CREDITS.

ADDITIONALLY, I HAVE BEEN ADVISED I WILL NOT HAVE AN OPPORTUNITY TO APPLY ANY ADDITIONAL FSA TO EXPEDITE MY RRC/HC PLACEMENT SINCE THE EARLIEST I CAN BE PLACED IN RRC/HC IS 8/6/25; ie. I MUST FIRST GRADUATE RDAP ON 8/5/25. THEREFORE, I AM REQUESTING MY FSA TIME CREDITS CURRENTLY BEING BANKED BE APPLIED TO FULFILL THE TERM OF MY RRC/HC PLACEMENT AND/OR FULFILL THE TERM OF MY SUPERVISED RELEASE. I AM ALSO REQUESTING CONFIRMATION THAT I WILL CONTINUE TO EARN 15 DAYS PER MONTH OF FSA TIME CREDITS WHILE IN HHC/HC PLACEMENT, WHICH WILL THEN BE APPLIED TO FULFILL THE TERM OF SUCH PLACEMENT AND/OR TO FURTHER REDUCE MY TERM OF SUPERVISED RELEASE.

* EXHIBIT #1: FSA TIME CREDIT ASSESSMENT REPORT 5/5/25 — PG 1.
* EXHIBIT #2: FSA TIME CREDIT ASSESSMENT REPORT 5/5/25 — PG 2

## FSA Time Credit Assessment
Register Number:37357-509, Last Name:SHAH

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| Register Number....: 37357-509 | Responsible Facility: BRY |
| Inmate Name | Assessment Date.....: 05-05-2025 |
|   Last............: SHAH | Period Start/Stop...: 02-17-2023 to 05-05-2025 |
|   First...........: JENNIFER | Accrued Pgm Days....: 808 |
|   Middle..........: | Disallowed Pgm Days.: 0 |
|   Suffix..........: | FTC Towards RRC/HC..: 15 |
| Gender..........: FEMALE | FTC Towards Release.: 345 |
| Start Incarceration: 02-17-2023 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 02-17-2023 | 09-13-2023 | accrue | 208 |

Accrued Pgm Days...: 208
Carry Over Pgm Days: 0
Time Credit Factor.: 10
Time Credits.......: 60

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 09-13-2023 | 05-05-2025 | accrue | 600 |

Accrued Pgm Days...: 600
Carry Over Pgm Days: 28
Time Credit Factor.: 15
Time Credits.......: 300

--- FSA Assessment(s) ---

| # | Start | Stop | Assignment | Asn Start | | Factor |
|---|---|---|---|---|---|---|
| 001 | 02-17-2023 | 03-17-2023 | R-MIN | 03-23-2023 | 12:04 | 10 |
| 002 | 03-17-2023 | 09-13-2023 | R-MIN | 03-23-2023 | 12:04 | 10 |
| 003 | 09-13-2023 | 03-11-2024 | R-MIN | 09-05-2023 | 11:13 | 15 |
| 004 | 03-11-2024 | 09-07-2024 | R-MIN | 02-21-2024 | 10:04 | 15 |
| 005 | 09-07-2024 | 03-06-2025 | R-MIN | 08-08-2024 | 09:57 | 15 |
| 006 | 03-06-2025 | 09-02-2025 | R-MIN | 01-29-2025 | 13:45 | 15 |

( EX#1bit # 2 )

FSA Time Credit Assessment
Register Number:37357-509, Last Name:SHAH

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only -----------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
05-05-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 08-30-2027
Projected Release Method: 3621E CMPL
FSA Projected Release Date: 09-19-2026
FSA Projected Release Method: FSRDAP REL
Date 3621E CRP: 08-05-2025
FSA Conditional Release Date: 09-19-2026
SCA Conditional Placement Days: 365
SCA Conditional Placement Date: 09-19-2025
FSA Conditional Placement Days: 150
FSA Conditional Placement Date: 04-22-2026
Conditional Transition To Community Date: 08-06-2025 (3621E CRP Adjustment From 04-22-2025)

# EXHIBIT E

JENNIFER SHAH, 37357-509
BRYAN FPC    UNT: 3 RDAP    QTR: D02-731L
P.O. BOX 2197
BRYAN,  TX 77805

RECEIVED

JUL 0 8 2025

FPC BRYAN

Regional Administrative Remedy Appeal No. 1243848-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal received on May 30, 2025. You are appealing the Warden's
response to your request for reconsideration of pre-release
placement in the Residential Reentry Center (RRC) home
confinement placement to utilize your First Step Act Time
Credits (FTCs), Second Chance Act (SCA) credits, and a placement
date on or around August 6, 2025.

A review into this matter revealed your RRC referral was
submitted to the Residential Reentry Manager (RRM) for review
with a recommendation for placement in the RRC to complete your
transitional component of the RDAP program.  The FTCs assessment
Best Case Scenario projects the maximum time credit calculation,
however, the RRM can modify the recommendation submitted based
on programming and facility resources.

At the time of your referral Unit Team recommended 365 days of
SCA, at which time you had (0) days of FTCs to use towards
RRC/HC placement. Therefore, you have been given a placement
date in accordance with Second Chance Act. The RRM has granted
you a placement date of February 24, 2026.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in that office within 30 days from the date of
this response.

JUL 0 2 2025
_____
Date

D/ Colbert
Regional Director

Regional Administrative Remedy Appeal No. 1243848-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal received on May 30, 2025. You are appealing the Warden's
response to your request for reconsideration of pre-release
placement in the Residential Reentry Center (RRC) home
confinement placement to utilize your First Step Act Time
Credits (FTCs), Second Chance Act (SCA) credits, and a placement
date on or around August 6, 2025.

A review into this matter revealed your RRC referral was
submitted to the Residential Reentry Manager (RRM) for review
with a recommendation for placement in the RRC to complete your
transitional component of the RDAP program.  The FTCs assessment
Best Case Scenario projects the maximum time credit calculation,
however, the RRM can modify the recommendation submitted based
on programming and facility resources.

At the time of your referral Unit Team recommended 365 days of
SCA, at which time you had (0) days of FTCs to use towards
RRC/HC placement. Therefore, you have been given a placement
date in accordance with Second Chance Act. The RRM has granted
you a placement date of February 24, 2026.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in that office within 30 days from the date of
this response.

JUL 0 2 2025
_____
Date

D. Colbert
Regional Director

Regional Administrative Remedy Appeal No. 1243848-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal received on May 30, 2025. You are appealing the Warden's
response to your request for reconsideration of pre-release
placement in the Residential Reentry Center (RRC) home
confinement placement to utilize your First Step Act Time
Credits (FTCs), Second Chance Act (SCA) credits, and a placement
date on or around August 6, 2025.

A review into this matter revealed your RRC referral was
submitted to the Residential Reentry Manager (RRM) for review
with a recommendation for placement in the RRC to complete your
transitional component of the RDAP program.  The FTCs assessment
Best Case Scenario projects the maximum time credit calculation,
however, the RRM can modify the recommendation submitted based
on programming and facility resources.

At the time of your referral Unit Team recommended 365 days of
SCA, at which time you had (0) days of FTCs to use towards
RRC/HC placement. Therefore, you have been given a placement
date in accordance with Second Chance Act. The RRM has granted
you a placement date of February 24, 2026.

Based on the above information, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in that office within 30 days from the date of
this response.

JUL 0 2 2025
_____
Date

_____
D. Colbert
Regional Director .

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: ___SHAH, JENNIFER K.___ ___37357-509___ ___RDAP___ ___FPC BRYAN___
        LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A - REASON FOR APPEAL**

I AM FORMALLY REQUESTING MY ORIGINAL RRC/HC RECOMMENDED DATE OF 8/6/25 BE RECONSIDERED. I HAVE EARNED ONE YR OF SCA CREDIT TOWARD MY RRC/HC PLACEMENT SET TO BEGIN 8/6/25, & MY PROJECTED RELEASE DATE IS 8/30/26, WHICH INCLUDES 8 U.S.C. 3621(e) CREDIT. THIS CORRECTION WILL ENSURE I AM NOT UNFAIRLY INCARCERATED PAST THE DATE ALLOWED BY SCA & THE BOP PROGRAM STATEMENT RELATED TO COMMUNITY TRANSITIONAL DRUG ABUSE TREATMENT, RRC ELIGIBILITY & THE APPLICATION OF FSA EARNED CREDIT.

PLEASE SEE ATTACHED CONTINUATION PAGE AS WELL AS FOLLOWING EXHIBITS:

    EXHIBIT #1 FSA TIME CREDIT SHEET

\* ON 5/15/25 MR. PAYNE, COUNSELOR FPC BRYAN GAVE ME BACK MY #8 ADMIN REMEDY AND STATED HE IS MAKING THE EXEC. DECISION TO ISSUE ME A #10 BECAUSE HE SAID THIS ISSUE CANNOT BE RESOLVED AT FPC BRYAN AND NEEDS TO GO DIRECTLY TO REGION. (I INCLUDED THE ORIGINAL #8 AND ATTACHMENTS SUBMITTED.)

___5/22/25___
    DATE                                       SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
MAY 3 0 2025
South Central Regional Office

_____          REGIONAL DIRECTOR
    DATE
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
ORIGINAL: RETURN TO INMATE                     CASE NUMBER: ___1243848-R1___

**Part C - RECEIPT**

                                                    CASE NUMBER: _____

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                       SIGNATURE, RECIPIENT OF REGIONAL APPEAL
    DATE

CONTINUATION PAGE.

AS PER THE RRC/HC DOCUMENT I SIGNED ON 3/27/25, I WAS ADVISED I WOULD BE RELEASED TO RRC/HC THE DAY AFTER I GRADUATED RDAP, 8/05/25. UNFORTUNATELY, MY RRC/HC PAPERWORK WAS THEN CAUGHT UP IN THE VACUUM OF TWO COMPETING BOP CENTRAL OFFICE MEMOS; A 3/31/25 MEMO LIMITING THE NUMBER OF DAYS ONE COULD APPLY TO RRC/HC VIA THE SECOND CHANCE ACT (SCA), AND ONE ISSUED 4/10/25, OFFICIALLY RESCINDING ANY AND ALL LIMITATIONS ON SCA ALLOCATIONS. SINCE I AM STILL SHOWING AN RRC/HC RELEASE DATE OF 2/24/26 (THIS IS OVER 6 MONTHS LATER THAN MY ORIG. RRC/HC DATE) I AM FORMALLY REQUESTING MY ORIGINAL RRC/HC DATE OF 8/6/25, BE REINSTATE SINCE I HAVE EARNED ONE YR. OF SCA CREDIT TOWARD MY RRC/HC PLACEMENT SET TO BEGIN 8/6/25, & MY PROJECTED RELEASE DATE IS 8/30/26 INCLUDE 18 U.S.C. 3621(e) CREDIT. THIS CORRECTION WILL ENSURE I AM NOT UNFAIRLY INCARCERATED PAST THE DATE ALLOWED BY SCA & THE BOP PROGRAM STATEMENT RELATED TO COMMUNITY TRANSITIONAL DRUG ABUSE TREATMENT, RRC ELIGIBILITI AND THE APPLICATIONS OF FSA EARNED CREDIT.

ADDITIONALLY, I HAVE BEEN ADVISED I WILL NOT HAVE AN OPPORTUNITY to APPLY ANY ADDITIONAL FSA to EXPEDITE MY RRC/HC PLACEMENT SINCE THE EARLIEST I CAN BE PLACED IN RRC/HC IS 8/6/25; i.e. I MUST FIRST GRADUATE RDAP ON 8/5/25. THEREFORE, I AM REQUESTING MY FSA TIME CREDITS CURRENTLY BEING BANKED BE APPLIED TO FULFILL THE TERM OF MY RRC/HC PLACEMENT AND/OR FULFILL THE TERM OF MY SUPERVISED RELEASE. I AM ALSO REQUESTING CONFIRMATION THAT I WILL CONTINUE TO EARN 15 DAYS PER MONTH OF FSA TIME CREDITS WHILE IN HHC/HC PLACEMENT, WHICH WILL THEN BE APPLIED TO FULFILL THE TERM OF SUCH PLACEMENT AND/OR FURTHER REDUCE MY TERM OF SUPERVISED RELEASE.

( EXHIBIT # 1 )

## FSA Time Credit Assessment
Register Number:37357-509, Last Name:SHAH

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only -------------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
05-05-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT. THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1) THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a) CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 08-30-2027
Projected Release Method: 3621E CMPL
FSA Projected Release Date: 09-19-2026
FSA Projected Release Method: FSRDAP REL
Date 3621E CRP: 08-05-2025
FSA Conditional Release Date: 09-19-2026
SCA Conditional Placement Days: 365
SCA Conditional Placement Date: 09-19-2025
FSA Conditional Placement Days: 150
FSA Conditional Placement Date: 04-22-2026
Conditional Transition To Community Date: 08-06-2025 (3621E CRP Adjustment From 04-22-2025)

# EXHIBIT F

*Hi CANDACE,*

*FYI - FOR YOUR*
*RECORDS.*

*THX, JEN*

*7/24*

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 9, 2025

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO   : JENNIFER SHAH, 37357-509
       BRYAN FPC     UNT: 3 RDAP     QTR: D02-731L
       P.O. BOX 2197
       BRYAN, TX 77805

**RECEIVED**

**JUL 18 2025**

FPC BRYAN

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 1243848-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED   : JULY 3, 2025
SUBJECT 1       : FSA TIME CREDITS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   REGIONAL OFFICE
                  ADMINISTRATIVE REMEDY APPEAL (BP-10) FORM OR   A COPY
                  OF THE (BP-10) RESPONSE FROM THE REGIONAL DIRECTOR.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                  15 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REMARKS         : RD RESPONDED TIMELY, INCLUDE COPY OF RESPONSE IF YOU
                  RESUBMIT.   REGION ACCEPTED W/O BP-9 BEING SUBMITTED
                  OR WARDEN RESPONSE.

*Refer to filer on 7/21/25*

RECEIPT - ADMINISTRATIVE REMEDY


DATE: JULY 17, 2025


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : JENNIFER SHAH, 37357-509
      BRYAN FPC    UNT: 3 RDAP    QTR: D02-731L


THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID        : 1243848-R1
DATE RECEIVED    : MAY 30, 2025
RESPONSE DUE     : JULY 29, 2025
SUBJECT 1        : FSA TIME CREDITS
SUBJECT 2        :

# EXHIBIT G



@cnrlawfirm.com

office :860-269-3939
fax   :860-269-3939

candace@cnrlawfirm.com

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

June 27, 2025

South Central Regional Office
U.S. Armed Forces Reserve Complex
Grand Prairie, TX 75051
Email: SCR-ExecAssistant-S@bop.gov

**RE: Jennifer Shah – Reg. No. 37357-509**

***Immediate Action Requested: Recalculation of Community Confinement Transfer Date***

To Whom it May Concern:

I represent Jennifer Shah, Reg. No. 37357-509, who is currently housed at FPC Bryan. I am writing to demand immediate recalculation of her transfer date to community confinement. Mrs. Shah was originally scheduled to transfer to a halfway house in her home district of Salt Lake City on August 6, 2025, the day after her scheduled RDAP graduation. However, without justification, her transfer date was unilaterally extended to February 24, 2026—a delay of more than six months—despite her continued eligibility under both the First Step Act and 18 U.S.C. § 3621(e).

On March 27, 2025, Mrs. Shah signed her RDAP release paperwork with her Unit Case Manager. At that time, she was informed her placement, and transfer would be consistent with the time credits she had earned through her successful participation in the RDAP program and accumulation of FSA credits. She has maintained a clean disciplinary record and has been a model inmate throughout her incarceration.

The change to her transfer date came after implementation of the Bureau of Prisons' March 31, 2025, memorandum, which improperly limited halfway house placements to 60 days—or 125 days for RDAP participants. However, less than two weeks later, on April 10, 2025, the BOP rescinded this policy and publicly confirmed that the limitations would not move forward due to their negative impact on the inmate population.

This ongoing failure to correct her transfer date is not only contrary to the BOP's own rescinded guidance, but it effectively denies Mrs. Shah the benefit of credits she has lawfully earned. Maintaining an outdated and inapplicable placement timeline, despite her clear eligibility for community confinement, reflects a breakdown in administrative accountability that cannot be justified.

Mrs. Shah is actively attempting to resolve this issue through the administrative remedy process before resorting to litigation. However, the lack of corrective action to date compels me to request your office's immediate intervention. She remains a strong candidate for home confinement and has done everything required to qualify for earlier release.

Accordingly, I respectfully request that the South Central Regional Office immediately recalculate Mrs. Shah's transfer date to reflect her lawful community placement date of August 6, 2025. Please confirm receipt and advise when this error will be corrected. If no action is taken,

we are prepared to escalate this matter through the appropriate legal channels.

*Candace Robinson Esq.*

Candace Robinson, Esquire



@cnrlawfirm.com 

office :860-269-3939
fax  :860-269-3939

candace@cnrlawfirm.com 

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

**VIA EMAIL & U.S. MAIL**                                          July 15, 2025
South Central Regional Office
U.S. Armed Forces Reserve Complex
Grand Prairie, TX 75051
Email: SCR-ExecAssistant-S@bop.gov

**RE: Jennifer Shah – Reg. No. 37357-509**

***Urgent Follow-Up: Recalculation of Community Confinement Transfer Date***

To Whom it May Concern:

I represent Jennifer Shah (Reg. No. 37357-509), currently housed at FPC Bryan. I am writing to follow up on my prior correspondence demanding immediate recalculation of Mrs. Shah's community confinement transfer date to August 6, 2025. Your agency's recent denial of her BP-10 appeal—claiming she has accrued zero days of First Step Act (FSA) time credits—is demonstrably false and unsupported by the record.

Mrs. Shah's FSA Time Credit Assessments, dating back to 2024, reflect consistent accumulation of earned time credits that qualify her for pre-release placement under 18 U.S.C. § 3624(g) and § 3621(e), as well as BOP policy. She has met every requirement of the Residential Drug Abuse Program (RDAP), remains disciplinary-free, and maintains a stable home plan and community support structure. She was originally scheduled for transfer on August 6, 2025, following her completion of RDAP—a placement that was fully in line with her earned credits and program compliance.

Instead, BOP unilaterally and arbitrarily extended her transfer date to February 24, 2026, citing the now-rescinded March 31, 2025, memorandum. That policy, which improperly sought to limit RRC placement to 60 or 125 days, was publicly withdrawn by the BOP on April 10, 2025, precisely because of its adverse and unlawful impact on eligible inmates. To continue denying her timely placement based on a rescinded directive is not only indefensible—it suggests intentional disregard of BOP's own revised guidance and the statutory rights of inmates like Mrs. Shah.

If Mrs. Shah's credits were not accurately reflected in SENTRY or BOPNet at the time of review, the remedy is not to deny her eligibility outright—but to correct the record and restore her lawful transfer date.

Mrs. Shah is exhausting every avenue through the administrative remedy process. But let me be clear: this delay is unjustified, unsupported by law or policy, and is causing irreparable harm. If BOP is unwilling or unable to fix what it broke, I am fully prepared to initiate litigation in federal court pursuant to 28 U.S.C. § 2241 to secure immediate judicial review.
To avoid further escalation, I am demanding the following:

1. Immediate recalculation of Mrs. Shah's community confinement transfer date to August 6, 2025;

2. Written confirmation that her earned time credits and RDAP eligibility have been properly accounted for;

3. Documentation explaining the basis for the denial of her BP-10 in light of her documented time credits.

Absent prompt corrective action, I will proceed with all appropriate legal remedies to protect Mrs. Shah's rights and challenge the Bureau's failure to adhere to its own policies and federal law.

Best,

*Candace Robinson Esq.*

Candace Robinson, Esquire



**L A W**

ATTORNEY CANDACE N. ROBINSON

@cnrlawfirm.com

office :860-269-3939
fax  :860-269-3939

candace@cnrlawfirm.com

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

**VIA U.S. MAIL**                                            August 6, 2025
Danon Colbert, Regional Director
South Central Regional Office
U.S. Armed Forces Reserve Complex
344 Marine Forces Drive
Grand Prairie, TX 75051

***Re: Unlawful Delay in Community Placement for Jennifer Shah (Reg. No. 37357-509), FPC Bryan***

Dear Regional Director Colbert,

I represent Mrs. Jennifer Shah, Reg. No. 37357-509, who is currently housed at Federal Prison Camp Bryan. I am writing to demand the immediate recalculation and correction of her transfer date to community confinement. Despite full eligibility under the First Step Act (FSA) and 18 U.S.C. § 3621(e), Mrs. Shah's halfway house transfer date—originally set for August 6, 2025, one day after her scheduled RDAP graduation—has been unilaterally and improperly extended to February 24, 2026.

This delay is in direct conflict with both the letter and spirit of the First Step Act and the Bureau's public commitments, including those set forth in your recent August 1, 2025, press release. That statement proudly announced the full implementation of the updated Time Credit Application Program and affirmed the Bureau's intention to minimize delays and ensure individuals receive the community placements they have earned. Yet Mrs. Shah's case illustrates the exact opposite.

On March 27, 2025, Mrs. Shah signed her RDAP release paperwork with her Unit Case Manager and was informed that her placement would align with the time credits she lawfully earned through her program participation and FSA credits. She has no disciplinary infractions, has completed all programming required under RDAP, and has consistently been a model inmate. There is no basis—statutory, administrative, or behavioral—to justify her continued incarceration.

The unjustified change to her release date followed the BOP's now-rescinded March 31, 2025 memorandum, which limited halfway house placements to 60 days (or 125 days for RDAP participants). As you are well aware, that policy was abandoned less than two weeks later, on April 10, 2025, after widespread criticism regarding its negative impact on rehabilitation and reintegration efforts. Yet, despite that policy being officially rescinded, its effects continue to linger in practice at FPC Bryan. Mrs. Shah's case is a prime example of that administrative failure.

The  press release dated August 1, 2025, boldly claims that "[f]ewer delays" and "more people getting the community placements they've earned" is now the reality across the Bureau. If that is indeed the case, then I respectfully request that your office ensure those policies are implemented at FPC Bryan without delay. Mrs. Shah has done everything required of her under federal law and BOP policy. There is no defensible reason for her to remain incarcerated until February 2026.

Mrs. Shah is attempting to resolve this matter through the administrative remedy process. However, continued failure to act in accordance with BOP policy and federal law will necessitate judicial intervention. At a time when the Bureau publicly promises transparency, efficiency, and accountability, actions at the institutional level must match that rhetoric.

Please consider this letter a formal request for immediate intervention and recalculation of Mrs. Shah's transfer date in line with her earned FSA and RDAP credits. I look forward to your prompt

response and to the Bureau taking swift corrective action in this matter.


Best,

*Candace Robinson Esq.*

Candace Robinson, Esquire



@cnrlawfirm.com

office :860-269-3939
fax  :860-269-3939

candace@cnrlawfirm.com

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

**VIA U.S. MAIL**                                         July 15, 2025
Office of General Counsel
Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534

**RE: Jennifer Shah – Reg. No. 37357-509**

***Urgent Follow-Up: Recalculation of Community Confinement Transfer Date***

To Whom it May Concern:

I represent Jennifer Shah (Reg. No. 37357-509), currently housed at FPC Bryan. I am writing to follow up on my prior correspondence demanding immediate recalculation of Mrs. Shah's community confinement transfer date to August 6, 2025. Your agency's recent denial of her BP-10 appeal—asserting that she has accrued zero days of First Step Act (FSA) time credits—is demonstrably false and contrary to her documented records.

Mrs. Shah's FSA Time Credit Assessments, dating back to 2024, show that she has earned significant credits through program compliance and active participation, which qualify her for earlier placement under 18 U.S.C. § 3624(g) and § 3621(e), as well as BOP policy. She has complied fully with the Residential Drug Abuse Program (RDAP), maintained a clean disciplinary record, and has a stable release plan in place. She was originally approved for transfer to community confinement on August 6, 2025, following her RDAP completion—a timeline entirely consistent with her eligibility.

However, her transfer date was unilaterally extended to February 24, 2026, based on the rescinded March 31, 2025, BOP memorandum, which sought to restrict halfway house placement durations. As your office is well aware, that policy was publicly withdrawn on April 10, 2025 due to its legally questionable application and the disruption it caused across facilities. Continuing to rely on a rescinded policy while denying earned credit is not only improper—it reflects a systemic breakdown in internal accountability.

Mrs. Shah currently has a pending BP-11 before your office. The right thing to do—consistent with both the letter and spirit of BOP policy—is to recalculate her community confinement placement date in accordance with her earned credits and RDAP status. The message currently being sent to inmates like Mrs. Shah is that even when they do everything right—attend required courses, remain compliant, avoid discipline—they are still punished through administrative neglect or misapplication of policy.

These nonsensical errors are avoidable and undermine the very goals of successful rehabilitation. The purpose of the administrative remedy process is to resolve these issues internally, without forcing inmates to bear the burden and cost of litigation over what should be a routine and straightforward correction. Yet time and again, that process fails those who are most compliant with their rehabilitative obligations.

To avoid further escalation, I am demanding the following:

1. Immediate recalculation of Mrs. Shah's community confinement transfer date to August 6, 2025;

2. Written confirmation that her earned time credits and RDAP eligibility have been properly accounted for;

3. Documentation explaining the basis for the denial of her BP-10 in light of her time credit assessments.

Should your office choose not to correct this error internally, we will pursue all appropriate legal avenues to ensure that Mrs. Shah's rights under federal law are enforced.

Best,

*Candace Robinson Esq.*

Candace Robinson, Esquire



@cnrlawfirm.com

office :860-269-3939
fax  :860-269-3939

candace@cnrlawfirm.com

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

June 27, 2025

Office of General Counsel
Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534

**RE: Jennifer Shah – Reg. No. 37357-509**

***Immediate Action Requested: Recalculation of Community Confinement Transfer Date***

To Whom it May Concern:

I represent Jennifer Shah, Reg. No. 37357-509, currently incarcerated at FPC Bryan. I am writing to request immediate action by your office to correct a continuing administrative error that has resulted in an improper delay of her transfer to community confinement.
On March 27, 2025, Mrs. Shah signed her RDAP release paperwork with her Unit Case Manager and was advised that her transfer to a halfway house in her home district of Salt Lake City would occur on August 6, 2025—the day after her scheduled graduation from the RDAP program. That date was based on her earned time credits through the First Step Act and her participation in RDAP pursuant to 18 U.S.C. § 3621(e).

Shortly after executing her paperwork, Mrs. Shah was informed that her transfer date had been pushed back to February 24, 2026 based on the March 31, 2025 memorandum issued by the Bureau of Prisons, which restricted halfway house placements to 60 days—or 125 days for RDAP participants. However, on April 10, 2025, the BOP publicly rescinded that memorandum in response to widespread concern about its negative impact on eligible inmates. The revised policy confirmed that the limitations would not move forward.

Despite this formal rescission, Mrs. Shah's transfer date has not been restored to the original August 6, 2025, date. She remains subject to a delay based entirely on guidance that is no longer in effect. This continued misapplication of rescinded policy is indefensible.
This ongoing failure to correct her transfer date is not only contrary to the BOP's own guidance, but it also deprives her of the full benefit of credits she has lawfully earned. Maintaining an outdated and inapplicable placement timeline—despite her clear eligibility for community confinement—reflects a breakdown in administrative oversight and undermines the integrity of the BOP's own rehabilitative programs.

Mrs. Shah has no disciplinary history, is a model inmate, and has taken every step required to qualify for earlier release. She is also actively pursuing administrative remedies to resolve this issue prior to seeking judicial relief. However, given the lack of action to date, I am requesting direct involvement from your office to ensure this matter is corrected without further delay.

I respectfully urge the Office of General Counsel to review this case and direct the South-Central Regional Office and/or FPC Bryan to recalculate her transfer date to reflect her lawful entitlement to community confinement effective August 6, 2025. Please confirm receipt of this correspondence and advise as to what steps, if any, have been taken to rectify this issue.

*Candace Robinson Esq.*

Candace Robinson, Esquire



@cnrlawfirm.com

office :860-269-3939
fax   :860-269-3939

candace@cnrlawfirm.com

320 Boston Post Road Suite 180
#1037 Darien, CT 06820

**VIA U.S. MAIL**                                                    August 6, 2025
Joshua Smith
Deputy Director, Federal Bureau of Prisons
320 First Street, NW
Washington, DC 20534

_**Re: Systemic Failure in Implementing FSA Credits – Jennifer Shah (Reg. No. 37357-509),
FPC Bryan**_

Dear Deputy Director Smith,

  I write to bring to your immediate attention a matter that squarely contradicts the Bureau of Prisons' publicly stated mission and recent policy implementation regarding the First Step Act (FSA). I represent Jennifer Shah, Reg. No. 37357-509, currently housed at Federal Prison Camp Bryan, who has been arbitrarily denied timely placement into community confinement despite full eligibility under 18 U.S.C. § 3621(e) and the FSA.

  Mrs. Shah is a minimum-security, non-violent offender who is scheduled to graduate from the Residential Drug Abuse Program (RDAP) on August 5, 2025. She has maintained a clean disciplinary record and has complied fully with every rehabilitative and educational requirement imposed during her incarceration. Her transfer to a halfway house in Salt Lake City was scheduled for August 6, 2025, consistent with the time credits she rightfully earned through RDAP and the FSA.

  However, following the Bureau's now-rescinded March 31, 2025, memorandum, her transfer date was unjustifiably delayed to February 24, 2026—a delay of more than six months. This extension remains in effect despite the April 10, 2025, rescission of the aforementioned memorandum and your agency's most recent announcement on August 1, 2025, touting the launch of the updated Time Credit Application Program.

  The press release dated August 1, 2025, made sweeping promises of reform, accountability, and the removal of bottlenecks that have historically denied eligible individuals the benefit of earned credits. Yet, Mrs. Shah's case exposes a stark disconnect between the Bureau's public messaging and institutional reality. If the Bureau has indeed implemented a centralized, efficient system to process conditional home confinement dates, then cases such as Mrs. Shah's should not exist.

  Mrs. Shah's administrative remedies have been denied, but absent timely regional or national intervention, she will be forced to seek judicial review under 28 U.S.C. § 2241. This is not an isolated error—it is symptomatic of systemic mismanagement, particularly at FPC Bryan, where similarly situated inmates continue to be deprived of lawful release opportunities based on rescinded guidance.

The Bureau cannot continue to operate on rhetoric while allowing outdated and discredited policies to quietly govern daily decision-making. Your leadership message stated, "We will find out, and we will take action." This is your opportunity to do just that. Accordingly, I respectfully request that you direct the South Central Regional Office and FPC Bryan to immediately recalculate Mrs. Shah's transfer date to reflect her earned FSA and RDAP credits. The failure to do so undermines the Bureau's credibility and the very foundation of the First Step Act.

I welcome the opportunity to discuss this matter further and look forward to your swift response.


Sincerely,

*Candace Robinson Esq.*

Candace Robinson, Esquire


Attachments:
- Letter to Warden, FPC Bryan (July 29, 2025)
- Letter to Regional Director, South Central Region (July 29, 2025)

# EXHIBIT H

# Certificate of Achievement

Presented to

### Jennifer Shah

For successfully completing the 500 hour
residential portion of the

## Residential Drug Abuse Treatment Program

*This milestone, while significant, is not the completion of the treatment requirements. The named inmate is hereby eligible to move forward to the follow-up and/or community treatment components of RDAP.*

M. Laguna, Psy.D., DAPC
FPC Bryan, Texas

08-05-2025
Date

# EXHIBIT I



## Individualized Needs Plan - Program Review    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SHAH, JENNIFER  37357-509

SEQUENCE: 02314000

Team Date: 07-16-2025

| | | |
|---|---|---|
| Facility: | BRY  BRYAN FPC | |
| Name: | SHAH, JENNIFER | |
| Register No.: | 37357-509 | |
| Age: | 51 | |
| Date of Birth: | 10-04-1973 | |

| | |
|---|---|
| Proj. Rel. Date: | 09-19-2026 |
| Proj. Rel. Mthd: | FIRST STEP ACT / RDAP |
| DNA Status: | BRY06985 / 02-21-2023 |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Inmate Photo ID Status

| |
|---|
| No photo ID - Expiration: null |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BRY | HOBBYCRAFT | HOBBY CRAFT ORDERLY | 07-08-2025 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BRY | ESL HAS | ENGLISH PROFICIENT | 02-22-2023 |
| BRY | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-22-2023 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BRY | C | 5K MILE WALK | 02-13-2025 | 03-04-2025 |
| BRY | C | FIT AND FABULOUS | 01-07-2025 | 02-05-2025 |
| BRY | C | BOOT CAMP | 10-08-2024 | 10-31-2024 |
| BRY | C | MEXICAN INDEPENDENCE DAY | 09-25-2024 | 09-25-2024 |
| BRY | C | WEIGHT MANAGEMENT CLASS | 08-07-2024 | 09-11-2024 |
| BRY | C | PUBLIC SPEAKING | 08-02-2024 | 08-22-2024 |
| BRY | C | ACE PERSONAL FINANCE | 08-01-2024 | 08-22-2024 |
| BRY | C | TOTAL FITNESS WELLNESS CLASS | 04-21-2024 | 05-29-2024 |
| BRY | C | ACE INTRO TO SPANISH | 05-14-2024 | 06-10-2024 |
| BRY | C | JOB FAIR INFORMATIONAL | 06-07-2024 | 06-07-2024 |
| BRY | C | ACE INTERVIEW PREP | 05-28-2024 | 05-31-2024 |
| BRY | C | ACE MINDSET | 03-25-2024 | 05-10-2024 |
| BRY | C | WRITING BASICS ACE CLASS | 03-25-2024 | 05-09-2024 |
| BRY | C | SCRAPBOOKING LEISURE CLASS | 09-07-2023 | 09-28-2023 |
| BRY | C | BEGINNING CERAMICS CLASS | 07-14-2023 | 07-30-2023 |
| BRY | C | EAT SMART WELLNESS CLASS | 08-05-2023 | 08-05-2023 |
| BRY | C | PLASTIC CANVAS LEISURE CLASS | 08-01-2023 | 08-27-2023 |
| BRY | C | S-ACT WORK KEYS ADVANCED | 05-04-2023 | 08-09-2023 |
| BRY | C | CROCHET CLASS | 06-09-2023 | 06-30-2023 |
| BRY | C | JUNETEENTH ACE CLASS | 06-20-2023 | 06-20-2023 |
| BRY | C | JOB FAIR INFORMATIONAL | 06-23-2023 | 06-23-2023 |
| BRY | C | KNITTING LEISURE CLASS | 03-10-2023 | 04-14-2023 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 07-11-2023 |
| CARE2 | STABLE, CHRONIC CARE | 02-23-2023 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-04-2023 |



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: SHAH, JENNIFER   37357-509

SEQUENCE: 02314000
Team Date: 07-16-2025

| Assignment | Description | Start |
|---|---|---|
| YES F/S | CLEARED FOR FOOD SERVICE | 02-23-2023 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP PART | RESIDENT DRUG TRMT PARTICIPANT | 09-12-2024 |
| ED COMP | DRUG EDUCATION COMPLETE | 07-20-2023 |
| ELIGIBLE | 18 USC 3621 RELEASE ELIGIBLE | 10-21-2024 |

**FRP Payment Plan**

Most Recent Payment Plan

**FRP Assignment:**      PART      FINANC RESP-PARTICIPATES      Start: 03-20-2023

Inmate Decision:   **AGREED**      $374.00      Frequency: **MONTHLY**
Payments past 6 months:      **$2,244.00**      Obligation Balance: **$6,637,175.25**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $6,646,251.00 | $6,637,175.25 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 07-10-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 06-13-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 05-14-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 04-10-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 03-11-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 02-12-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |

**FRP Deposits**

Trust Fund Deposits - Past 6 months:    $5,039.00        Payments commensurate ?   Y

New Payment Plan:    ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 03-13-2023 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 07-16-2025 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 07-16-2025 |
| N-COGNTV N | NEED - COGNITIONS NO | 07-16-2025 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 02-24-2023 |
| N-EDUC N | NEED - EDUCATION NO | 07-16-2025 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 07-16-2025 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 07-16-2025 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 07-16-2025 |
| N-MEDICL Y | NEED - MEDICAL YES | 07-16-2025 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 07-16-2025 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 07-16-2025 |
| N-TRAUMA N | NEED - TRAUMA NO | 07-16-2025 |
| N-WORK N | NEED - WORK NO | 07-16-2025 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 07-16-2025 |

**Progress since last review**

Shah is assigned as a Hobby Craft orderly. She has completed House of Healing.

**Next Program Review Goals**

Enroll in Brain Health as You Age (Recreation).

**Long Term Goals**

Complete Brain Health as You Age by 01/2026.



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: SHAH, JENNIFER  37357-509

SEQUENCE: 02314000
Team Date: 07-16-2025

### RRC/HC Placement

Recommended Placement on date 08-06-2025.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : There is available Residential Re-Entry Centers (RRC) in her release area
- Offense : Conspiracy to Commit Wire Fraud
- Prisoner : None
- Court Statement : The sentencing court did not make any statement on the Judgment and Commitment Order regarding RRC placement
- Sentencing Commission : There is no pertinent policy by the Sentencing Commission

Inmate Shah was reviewed for the 2nd Chance Act Eligibility of 2007. The Unit Teams recommendation is intended to aid her in implementing her plan for release, securing a residence, employment, and a successful reintegration into the community.

### Comments

The unit team encourages her to maintain communication with the education department to gain knowledge in the programs they have to offer. She is encouraged to maintain communication with her unit team to address any questions or concerns she may have. The unit team encourages her to keep her personal and room sanitation at a high level, while saving money for her release. She is encouraged to maintain clear conduct, while maintaining communication with friends and family to establish and strengthen social bonds. RRC placement will be accessed in accordance with the First Step Act and the Second Chance Act 17-19 months prior to release. Reviewed 407/408 contact information. PREA Risk Factors Reassessed, and no concerns at this time.



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: SHAH, JENNIFER  37357-509

SEQUENCE: 02314000
Team Date: 07-16-2025

Name: SHAH, JENNIFER
Register No.: 37357-509
Age: 51
Date of Birth: 10-04-1973

DNA Status:  BRY06985 / 02-21-2023

_____
Inmate   (SHAH, JENNIFER. Register No.: 37357-509)


_____
Date


_____          _____
Unit Manager / Chairperson                  Case Manager


_____          _____
Date                                        Date

```
  BRYBZ           *        PUBLIC INFORMATION        *      07-16-2025
  PAGE 002        *            INMATE DATA           *      10:38:35
                             AS OF 07-16-2025

REGNO..: 37357-509 NAME: SHAH, JENNIFER

                    RESP OF: BRY
                    PHONE..: 979-823-1879    FAX: 979-821-3316
FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 02-28-2026

FINAL STATUTORY RELEASE FOR INMATE.: 08-30-2027 VIA 3621E CMPL
          WITH APPLIED FSA CREDITS.: 345  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 09-19-2026 VIA FSRDAP REL

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER...................: 01:(S4) 19-CR-00833-
JUDGE...........................: STEIN
DATE SENTENCED/PROBATION IMPOSED: 01-06-2023
DATE COMMITTED..................: 02-17-2023
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS   MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.:  $100.00         $00.00         $00.00        $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $6,646,251.00

------------------------CURRENT OBLIGATION NO: 010 ----------------------------
OFFENSE CODE....:  820     COMMUNICATIONS ACT

OFF/CHG: 18;1349, 2326(1) AND (2) CONSPIRACY TO COMMIT WIRE FRAUD

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   78 MONTHS
  TERM OF SUPERVISION............:    5 YEARS
  DATE OF OFFENSE................: 03-31-2021

G0002      MORE PAGES TO FOLLOW . . .
```

```
BRYBZ          *              PUBLIC INFORMATION         *      07-16-2025
PAGE 003 OF 003 *                INMATE DATA              *      10:38:35
                               AS OF 07-16-2025
```

REGNO..: 37357-509 NAME: SHAH, JENNIFER

```
                    RESP OF: BRY
                    PHONE..: 979-823-1879    FAX: 979-821-3316
------------------------CURRENT COMPUTATION NO: 010 -------------------------
```

COMPUTATION 010 WAS LAST UPDATED ON 04-30-2025 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 04-10-2023 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 02-17-2023
TOTAL TERM IN EFFECT............:    78 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    .6 YEARS        6 MONTHS
EARLIEST DATE OF OFFENSE........: 03-31-2021

JAIL CREDIT.....................:  FROM DATE        THRU DATE
                                   03-30-2021       03-30-2021

TOTAL PRIOR CREDIT TIME.........: 1
TOTAL INOPERATIVE TIME..........: 0.
TOTAL GCT EARNED AND PROJECTED..: 350
TOTAL GCT EARNED................: 108
STATUTORY RELEASE DATE PROJECTED: 08-30-2028
ELDERLY OFFENDER TWO THIRDS DATE: 06-17-2027
EXPIRATION FULL TERM DATE.......: 08-15-2029
TIME SERVED.....................:    2 YEARS        5 MONTHS        1 DAYS
PERCENTAGE OF FULL TERM SERVED..:   37.1
PERCENT OF STATUTORY TERM SERVED:   43.5

PROJECTED SATISFACTION DATE.....: 09-19-2026
PROJECTED SATISFACTION METHOD...: FSRDAP REL
     WITH FSA CREDITS INCLUDED...: 345
```

S0055        NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

```
BRYBZ           *        PUBLIC INFORMATION           *      07-16-2025
PAGE 001        *           INMATE DATA               *      10:38:35
                         AS OF 07-16-2025

REGNO..: 37357-509 NAME: SHAH, JENNIFER

                    RESP OF: BRY
                    PHONE..: 979-823-1879    FAX: 979-821-3316
                                             RACE/SEX...: ASIAN/PAC.ISL. / FEMAL
                                             AGE:  51
PROJ REL MT: BOP SUBST ABUSE TRTMT REL       PAR ELIG DT: N/A
PROJ REL DT: 08-30-2027                       PAR HEAR DT:
```

G0002        MORE PAGES TO FOLLOW . . .

# FSA Time Credit Assessment

Register Number:37357-509, Last Name:SHAH

## U.S. DEPARTMENT OF JUSTICE

## FEDERAL BUREAU OF PRISONS

Register Number....: 37357-509

Inmate Name

    Last............: SHAH

    First...........: JENNIFER

    Middle..........:

    Suffix..........:

Gender............: FEMALE

Start Incarceration: 02-17-2023

Responsible Facility: BRY

Assessment Date.....: 07-07-2025

Period Start/Stop...: 02-17-2023 to 07-07-2025

Accrued Pgm Days....: 871

Disallowed Pgm Days.: 0

FTC Towards RRC/HC..: 40

FTC Towards Release.: 365

Apply FTC to Release: Yes

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|------------|----------|
| 02-17-2023 | 09-13-2023 | accrue | 208 |

    Accrued Pgm Days...: 208

    Carry Over Pgm Days: 0

    Time Credit Factor.: 10

    Time Credits.......: 60

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|------------|----------|
| 09-13-2023 | 07-07-2025 | accrue | 663 |

    Accrued Pgm Days...: 663

    Carry Over Pgm Days: 28

    Time Credit Factor.: 15

    Time Credits.......: 345

--- FSA Assessment(s) ---

| # | Start | Stop | Assignment | Asn Start | | Factor |
|-----|------------|------------|------------|------------|-------|--------|
| 001 | 02-17-2023 | 03-17-2023 | R-MIN | 03-23-2023 | 12:04 | 10 |
| 002 | 03-17-2023 | 09-13-2023 | R-MIN | 03-23-2023 | 12:04 | 10 |
| 003 | 09-13-2023 | 03-11-2024 | R-MIN | 09-05-2023 | 11:13 | 15 |
| 004 | 03-11-2024 | 09-07-2024 | R-MIN | 02-21-2024 | 10:04 | 15 |
| 005 | 09-07-2024 | 03-06-2025 | R-MIN | 08-08-2024 | 09:57 | 15 |
| 006 | 03-06-2025 | 09-02-2025 | R-MIN | 01-29-2025 | 13:45 | 15 |

07-07-2025

(1)

Assessment# -2143439189

## FSA Time Credit Assessment
Register Number:37357-509, Last Name:SHAH

U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only -----------------
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
07-07-2025. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 08-30-2027
Projected Release Method: 3621E CMPL
FSA Projected Release Date: 09-19-2026
FSA Projected Release Method: FSRDAP REL
Date 3621E CRP: 08-05-2025
FSA Conditional Release Date: 09-19-2026
SCA Conditional Placement Days: 365
SCA Conditional Placement Date: 09-19-2025
FSA Conditional Placement Days: 160
FSA Conditional Placement Date: 04-12-2026
Conditional Transition To Community Date: 08-06-2025 (3621E CRP Adjustment From 04-12-2025)

# EXHIBIT J



| Individualized Needs Plan - Program Review   (Inmate Copy) | SEQUENCE: 02314000 |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | Team Date: 02-04-2025 |
| Plan is for inmate: SHAH, JENNIFER  37357-509 | |

| | | Proj. Rel. Date: | 11-03-2026 |
|---|---|---|---|
| Facility: | BRY  BRYAN FPC | Proj. Rel. Mthd: | FSRDAP CND |
| Name: | SHAH, JENNIFER | DNA Status: | BRY06985 / 02-21-2023 |
| Register No.: | 37357-509 | | |
| Age: | 51 | | |
| Date of Birth: | 10-04-1973 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Inmate Photo ID Status

| No photo ID - Expiration: null |
|---|

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BRY | OUTDOORREC | OUTDOOR REC ORDERLY | 04-26-2024 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BRY | ESL HAS | ENGLISH PROFICIENT | 02-22-2023 |
| BRY | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-22-2023 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BRY | C | BOOT CAMP | 10-08-2024 | 10-31-2024 |
| BRY | C | MEXICAN INDEPENDENCE DAY | 09-25-2024 | 09-25-2024 |
| BRY | C | WEIGHT MANAGEMENT CLASS | 08-07-2024 | 09-11-2024 |
| BRY | C | PUBLIC SPEAKING | 08-02-2024 | 08-22-2024 |
| BRY | C | ACE PERSONAL FINANCE | 08-01-2024 | 08-22-2024 |
| BRY | C | TOTAL FITNESS WELLNESS CLASS | 04-21-2024 | 05-29-2024 |
| BRY | C | ACE INTRO TO SPANISH | 05-14-2024 | 06-10-2024 |
| BRY | C | JOB FAIR INFORMATIONAL | 06-07-2024 | 06-07-2024 |
| BRY | C | ACE INTERVIEW PREP | 05-28-2024 | 05-31-2024 |
| BRY | C | ACE MINDSET | 03-25-2024 | 05-10-2024 |
| BRY | C | WRITING BASICS ACE CLASS | 03-25-2024 | 05-09-2024 |
| BRY | C | SCRAPBOOKING LEISURE CLASS | 09-07-2023 | 09-28-2023 |
| BRY | C | BEGINNING CERAMICS CLASS | 07-14-2023 | 07-30-2023 |
| BRY | C | EAT SMART WELLNESS CLASS | 08-05-2023 | 08-05-2023 |
| BRY | C | PLASTIC CANVAS LEISURE CLASS | 08-01-2023 | 08-27-2023 |
| BRY | C | S-ACT WORK KEYS ADVANCED | 05-04-2023 | 08-09-2023 |
| BRY | C | CROCHET CLASS | 06-09-2023 | 06-30-2023 |
| BRY | C | JUNETEENTH ACE CLASS | 06-20-2023 | 06-20-2023 |
| BRY | C | JOB FAIR INFORMATIONAL | 06-23-2023 | 06-23-2023 |
| BRY | C | KNITTING LEISURE CLASS | 03-10-2023 | 04-14-2023 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 07-11-2023 |
| CARE2 | STABLE, CHRONIC CARE | 02-23-2023 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-04-2023 |
| YES F/S | CLEARED FOR FOOD SERVICE | 02-23-2023 |

## Current Drug Assignments



## Individualized Needs Plan - Program Review    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SHAH, JENNIFER  37357-509

SEQUENCE: 02314000

Team Date: 02-04-2025

| Assignment | Description | Start |
|---|---|---|
| DAP PART | RESIDENT DRUG TRMT PARTICIPANT | 09-12-2024 |
| ED COMP | DRUG EDUCATION COMPLETE | 07-20-2023 |
| ELIGIBLE | 18 USC 3621 RELEASE ELIGIBLE | 10-21-2024 |

### FRP Payment Plan

Most Recent Payment Plan

**FRP Assignment:    PART    FINANC RESP-PARTICIPATES    Start: 03-20-2023**

Inmate Decision:  **AGREED**    $374.00    Frequency: **MONTHLY**

Payments past 6 months:    $2,244.00    Obligation Balance: **$6,639,419.25**

#### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status | |
|---|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ | |
| | | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $6,646,251.00 | $6,639,419.25 | IMMEDIATE | AGREED | |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 01-14-2025 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 12-11-2024 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 11-14-2024 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 10-10-2024 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 09-11-2024 | BRY | PAYMENT | INSIDE PMT | $374.00 |
| | 08-13-2024 | BRY | PAYMENT | INSIDE PMT | $374.00 |

### FRP Deposits

Trust Fund Deposits - Past 6 months:    $4,714.95    Payments commensurate ?    Y

New Payment Plan:    ** No data **

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 03-13-2023 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 01-29-2025 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 01-29-2025 |
| N-COGNTV N | NEED - COGNITIONS NO | 01-29-2025 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 02-24-2023 |
| N-EDUC N | NEED - EDUCATION NO | 01-29-2025 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 01-29-2025 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 01-29-2025 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 01-29-2025 |
| N-MEDICL Y | NEED - MEDICAL YES | 01-29-2025 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 01-29-2025 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 01-29-2025 |
| N-TRAUMA N | NEED - TRAUMA NO | 01-29-2025 |
| N-WORK N | NEED - WORK NO | 01-29-2025 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 01-29-2025 |

### Progress since last review

Initial RDAP Team. Your FSA needs are listed on your team sheet.
Last Team: Unit team will recommend Shah enroll in Women's Aging. You completed the course on 04/25/2024.
We will now look at your FSA Cognitions need.

### Next Program Review Goals

Next Team: 07/2025.
Enroll in the FSA course House of Healing (Chaplain Services).

### Long Term Goals

Complete the FSA Course House of Healing by 11/2026.

### RRC/HC Placement



**Individualized Needs Plan - Program Review    (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SHAH, JENNIFER  37357-509

SEQUENCE: 02314000

Team Date: 02-04-2025

No.

Management decision - SCA review to be completed 17-19 months prior to PRD..

Consideration has been given for Five Factor Review (Second Chance Act):

- Facility Resources : There is available Residential Re-Entry Centers (RRC) in her release area
- Offense : Conspiracy to Commit Wire Fraud
- Prisoner : None
- Court Statement : The sentencing court did not make any statement on the Judgment and Commitment Order regarding RRC placement
- Sentencing Commission : There is no pertinent policy by the Sentencing Commission

Inmate Shah was reviewed for the 2nd Chance Act Eligibility of 2007. The Unit Teams recommendation is intended to aid her in implementing her plan for release, securing a residence, employment, and a successful reintegration into the community.

**Comments**

The unit team encourages her to maintain communication with the education department to gain knowledge in the programs they have to offer. She is encouraged to maintain communication with her unit team to address any questions or concerns she may have. The unit team encourages her to keep her personal and room sanitation at a high level, while saving money for her release. She is encouraged to maintain clear conduct, while maintaining communication with friends and family to establish and strengthen social bonds. RRC placement will be accessed in accordance with the First Step Act and the Second Chance Act 17-19 months prior to release. Reviewed 407/408 contact information. PREA Risk Factors Reassessed, and no concerns at this time.



**Individualized Needs Plan - Program Review   (Inmate Copy)**

SEQUENCE: 02314000

Dept. of Justice / Federal Bureau of Prisons

Team Date: 02-04-2025

Plan is for inmate: SHAH, JENNIFER  37357-509

Name:  SHAH, JENNIFER

DNA Status:  BRY06985 / 02-21-2023

Register No.:  **37357-509**

Age:  51

Date of Birth:  10-04-1973

_____

Inmate    (SHAH, JENNIFER. Register No.: 37357-509)

_____

Date

_____          _____

Unit Manager / Chairperson                                    Case Manager

_____          _____

Date                                                                        Date

```
  BRYC6           *           PUBLIC INFORMATION          *      02-04-2025
PAGE 001           *             INMATE DATA              ·      11:40:58
                                AS OF 02-04-2025


REGNO..: 37357-509 NAME: SHAH, JENNIFER

                          RESP OF: BRY
                          PHONE..: 979-823-1879    FAX: 979-821-3316
                                                   RACE/SEX...: ASIAN/PAC.ISL. / FEMAL
                                                   AGE:  51
PROJ REL MT: 3621E COND                            PAR ELIG DT: N/A
PROJ REL DT: 08-30-2027                            PAR HEAR DT:
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
  BRYC6          *        PUBLIC INFORMATION          *    02-04-2025
  PAGE 002       *          INMATE DATA               *    11:40:58
                          AS OF 02-04-2025


REGNO..: 37357-509 NAME: SHAH, JENNIFER

                    RESP OF: BRY
                    PHONE..: 979-823-1879    FAX: 979-821-3316
FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE.....: 05-04-2026

FINAL STATUTORY RELEASE FOR INMATE.: 08-30-2027 VIA 3621E COND
          WITH APPLIED FSA CREDITS.: 300  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 11-03-2026 VIA FSRDAP CND

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION............: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER....................: 01:(S4) 19-CR-00833-
JUDGE............................: STEIN
DATE SENTENCED/PROBATION IMPOSED: 01-06-2023
DATE COMMITTED...................: 02-17-2023
HOW COMMITTED....................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED................: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES      COSTS
NON-COMMITTED.:  $100.00        $00.00          $00.00     $00.00

RESTITUTION...: PROPERTY: NO  SERVICES: NO      AMOUNT: $6,646,251.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  820    COMMUNICATIONS ACT
OFF/CHG: 18:1349, 2326(1) AND (2) CONSPIRACY TO COMMIT WIRE FRAUD

 SENTENCE PROCEDURE..............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    78 MONTHS
 TERM OF SUPERVISION.............:     5 YEARS
 DATE OF OFFENSE.................: 03-31-2021




G0002      MORE PAGES TO FOLLOW . . .
```

```
BRYC6                            PUBLIC INFORMATION              02-04-2025
PAGE 003 OF 003 *                   INMATE DATA                  11:40:58
                                  AS OF 02-04-2025


REGNO..: 37357-509 NAME: SHAH, JENNIFER

                     RESP OF: BRY
                     PHONE..: 979-823-1879    FAX: 979-821-3316
-----------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 01-14-2025 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 04-10-2023 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN...........: 02-17-2023
TOTAL TERM IN EFFECT.............:    78 MONTHS
TOTAL TERM IN EFFECT CONVERTED...:     6 YEARS        6 MONTHS
EARLIEST DATE OF OFFENSE.........: 03-31-2021

JAIL CREDIT......................:   FROM DATE      THRU DATE
                                     03-30-2021     03-30-2021

TOTAL PRIOR CREDIT TIME..........: 1
TOTAL INOPERATIVE TIME...........: 0
TOTAL GCT EARNED AND PROJECTED...: 350
TOTAL GCT EARNED.................: 54
STATUTORY RELEASE DATE PROJECTED: 08-30-2028
ELDERLY OFFENDER TWO THIRDS DATE: 06-17-2027
EXPIRATION FULL TERM DATE.......: 08-15-2029
TIME SERVED......................:     1 YEARS     11 MONTHS    20 DAYS
PERCENTAGE OF FULL TERM SERVED..:  30.3
PERCENT OF STATUTORY TERM SERVED:  35.5

PROJECTED SATISFACTION DATE.....: 11-03-2026
PROJECTED SATISFACTION METHOD...: FSRDAP CND
     WITH FSA CREDITS INCLUDED...: 300




G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# EXHIBIT K



U.S. Department of Justice
Federal Bureau of Prisons

---

**FOR IMMEDIATE RELEASE**
May 28, 2025

Contact: Office of Public Affairs
202-514-6551

### Federal Bureau of Prisons Issues Directive to Expand Home Confinement, Advance First Step Act

**WASHINGTON, DC** - The Federal Bureau of Prisons (BOP or Bureau) has announced new guidance from Director William K. Marshall III directing staff to expand the use of home confinement for eligible individuals under the First Step Act (FSA) and Second Chance Act (SCA). The directive is rooted in the principle of smart, fair criminal justice reform—reform that began when President Donald J. Trump disrupted entrenched political paralysis and signed the FSA into law, delivering the most significant overhaul to the federal justice system in a generation.

This latest policy reinforces the Bureau's responsibility to uphold the law and ensure that eligible incarcerated individuals—particularly those who do not require transitional services at Residential Reentry Centers (RRCs)—are transferred to home confinement as soon as statutorily possible. This approach not only honors the bipartisan vision behind the FSA but also reflects the commitment to give second chances to those who have paid their debt and are ready to safely return to their communities.

"President Trump said he would fight for the forgotten men and women of this country, and the First Step Act proved he meant it," said Director Marshall. "Now, we are ensuring that this reform continues to work—not just as a policy, but as a promise to Americans seeking redemption and a path forward."

The new directive outlines the following expectations for staff:

- **Home confinement is a priority** for individuals who are eligible and do not require the structured support of an RRC. RRC placement will be reserved for those with the greatest need.

- **Use of Conditional Placement Dates:** Unit Teams must use FSA and SCA Conditional Placement Dates—based on projected Earned Time Credits (FTCs) expected to earn—to guide prerelease planning and ensure accurate and timely referrals.

- **Clarification of Statutory Authority:** Staff must distinguish between FSA and SCA eligibility criteria, applying time credits appropriately and understanding the limits of each statute, particularly when determining duration of prerelease custody. There is **no restriction** concerning how many FTCs may be applied toward home confinement.

- **Individualized Referral Process:** Decisions will be based on each person's needs, support systems and readiness for reintegration.

This directive builds on the success of the First Step Act, which has helped individuals return to their communities with a recidivism rate significantly lower than the national average. It recognizes that real lives have been changed and communities made safer—proof that smart reform and public safety can go hand-in-hand.

The Bureau remains committed to the rule of law and the fair treatment of all individuals in its custody. As President Trump has shown in both word and action, second chances are not just possible—they are necessary for a justice system worthy of the American people.

This directive is a critical step toward continuing that legacy. In President Trump's second term, the promise of reform will not only be preserved—it will be completed.

###

# EXHIBIT L

# Home Confinement and Prerelease Placement Updates

### We're Maximizing Pre-Release Custody

The Bureau of Prisons (BOP) is combining or "stacking" two laws—the *First Step Act (FSA)* and the *Second Chance Act (SCA)*—with the goal of maximizing the amount of time eligible individuals can spend in prerelease custody.

### More People Will Go Directly to Home Confinement (HC)

- If you've earned time credits under the FSA and able to apply your credits and/or are eligible under the SCA, you do not require the services of a Residential Reentry Center (RRC), and meet eligibility requirements and are appropriate for HC, you shall be referred directly to **HC**.

- The goal is to reserve halfway house beds for those who need them most.

### Conditional Placement Dates

- For those who are FSA eligible and able to apply FTCs, your release to the community will be based on a **Conditional Placement Date**, which considers both your earned FSA Time Credits *and* whether you're eligible under the SCA.

- These are **projected dates**, meaning they assume you continue to successfully participate in programming and remain discipline-free.

### If You Qualify, Your Referral Should Not Be Delayed

- If you're eligible under FSA and/or SCA and meet all criteria, **your referral should not be delayed**.

- Staff will refer you based on your **Conditional Placement Date**, even before your credits are fully earned.

### What You Don't Need to Be Referred

- **You do not need to have prior employment** to be considered for home confinement.

- Your **potential** to work may be viewed positively, but it is not required.

- Your release plan, stability, and public safety risks are what matter most.

### The Rules Are Clear

- There is **no limit** on how many FSA credits you can apply toward home confinement.

- If you're only eligible under the SCA, your prerelease time is limited to **up to 12 months in a halfway house or up to 6 months (or 10% of your sentence) in home confinement**—whichever is less.

- For individuals who have earned less than 365 days of FSA Time Credits towards supervised release, staff must also consider adding **up to** an additional 12 months of prerelease time under the SCA, **based on the five-factor review**.

    - The FSA Time Credit Work Sheet for time under the SCA defaults to and will remain "0" until your Unit Team inputs the prerelease time as determined based on the five-factor review. This number will range from 0 to 12 months.

# EXHIBIT M



**U.S. Department of Justice**
**Federal Bureau of Prisons**

**FOR IMMEDIATE RELEASE**
June 17, 2025

Contact: Office of Public Affairs
202-514-6551

### Bureau of Prisons Issues Directive to Fully Implement First Step Act and Second Chance Act

**WASHINGTON, DC** - In order to restore integrity and fiscal responsibility to the federal prison system, the Bureau of Prisons (BOP) today issued a policy memorandum to staff directing the robust and comprehensive implementation of both the *First Step Act of 2018* and the *Second Chance Act of 2008*—two bipartisan cornerstones of modern criminal justice reform.

"This is the dawn of a new era, one in which the Bureau of Prisons will realize the full potential of the First Step Act and Second Chance Act," said BOP Director William K. Marshall III. "The comprehensive policy outlined today will eliminate barriers to maximize the availability of home confinement to those who qualify for community release under the First Step Act and Second Chance Act. This change in policy will fully operationalize the laws as intended by Congress and ensure a smoother transition for many individuals to return to productive lives after incarceration."

The new policy announced today will have immediate and meaningful benefits. It will:

- **Avoid wasting millions of taxpayer dollars** on unnecessary incarceration,
- **Reduce strain on prison bedspace and staffing**, and
- **Eliminate prolonged and unnecessary burdens on inmates and their families**— particularly those with stable home environments and strong community ties.

The new directive ensures that:

- **FSA Earned Time Credits and SCA eligibility will be treated as cumulative and stackable**, allowing qualified individuals to serve meaningful portions of their sentences in home confinement when appropriate.
- **Conditional Placement Dates**—based on projected credit accrual and statutory timelines— will drive timely referrals, not bureaucratic inertia.
- **Stable housing and community reintegration readiness**, not past employment, will guide placement decisions.
- **RRC bed capacity limitations will not be a barrier to Home Confinement** when an individual is statutorily eligible and appropriate for such placement.

Director Marshall continued: "This action marks a bold shift from years of inaction toward a policy rooted in **public safety, fiscal responsibility, and second chances**. By empowering the agency to release more people who are ready to return to society, we not only save taxpayer dollars, we strengthen families, ease overcrowding, and build safer communities."

###

# EXHIBIT N



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**
July 14, 2025

Contact: Office of Public Affairs
202-514-6551

### Federal Bureau of Prisons Launches FSA Task Force

**WASHINGTON, D.C.:** The Federal Bureau of Prisons (BOP or Bureau) today announced the creation of the FSA Task Force, a strategic team initiative designed to expedite the transfer of eligible inmates to home confinement while directly supporting agency staff who have been unfairly burdened by outdated data systems.

The announcement is a direct response to feedback received by Director William K. Marshall III during recent visits to Bureau institutions, where he met face-to-face with staff and inmates.

*"Staff were taking the blame for delays they didn't cause,"* said Director Marshall. *"They told me their systems weren't always showing the right dates. Inmates and their families assumed they were ignoring my directive. That wasn't true for the vast majority of our staff. We have dedicated professionals who want to do the right thing and simply needed the right tools and information to do their jobs. Thanks to President Trump's leadership and the One Big Beautiful Bill Act, we will be able to provide those needed tools. But let me be absolutely clear – where we find that 1% who weren't doing their jobs with integrity, we will find them and hold them accountable because accountability goes both ways."*

The FSA Task Force, based at the Bureau's Designation and Sentence Computation Center (DSCC), will work in tandem with Residential Reentry Management (RRM) offices to ensure timely home confinement placements under the First Step Act (FSA) and Second Chance Act (SCA). While long-term technical updates continue, this manual intervention is designed to deliver immediate relief.

Specifically, the task force will:

- Identify inmates currently in Residential Reentry Centers (RRCs) who are eligible for home confinement;
- Manually calculate home confinement placement dates which "stacks" both the FSA and SCA;
- Provide these dates to RRM offices to facilitate faster transitions;
- Review additional incarcerated individuals within institutions who may also qualify.

*"This is a win for everyone,"* said Rick Stover, Senior Deputy Assistant Director at DSCC.

*"Inmates are returning to their communities sooner. Staff are no longer forced to rely on flawed data. And we're freeing up RRC beds for others who are waiting."*

The initiative is part of Director Marshall's broader strategy of "Leadership in Action," which has included institutional walk-throughs, direct engagement with frontline staff, and timely operational changes based on what he hears.

*"Leadership is about showing up, listening, and doing something about what you hear,"* said Director Marshall. *"That's how we're building trust; not just with the public, but within our staff. When the majority of our employees are supported and empowered, our entire system runs better. And where misconduct exists, we will root it out. That's the Bureau of Prisons I'm committed to building."*

###